Dale BRUNS and Beverly
Bruns, Appellants,

v.

HARTFORD ACCIDENT AND INDEMNITY COMPANY, and the St. Paul Fire and Marine Insurance Company, Appellees,

v.

Kristine D. ROBERTS,
Intervenor-Appellant.

No. 86–22.

Supreme Court of Iowa.

June 17, 1987.

Rehearing Denied July 20, 1987.

Robert D. Fulton of Fulton, Frerichs, Martin & Andres, Waterloo, for appellants.

Timothy M. Sweet of Beard & Sweet, Reinbeck, for intervenor-appellant.

Paul C. Peglow of Johnson, Sudenga, Carter, Latham & Peglow, Marshalltown, for appellee Hartford.

George L. Weilein and Cynthia A. Scherrman of Gallagher, Langlas & Gallagher, P.C., Waterloo, for appellee St. Paul.

Considered by McGIVERIN, P.J., and LARSON, CARTER, WOLLE, and LAVORATO, JJ.

WOLLE, Justice.

We first considered the two-vehicle 1981 hit-and-run accident underlying this declaratory judgment action in *Roberts v. Bruns*, 387 N.W.2d 140 (Iowa 1986). In that personal injury case both Kristine Roberts and her mother sought to recover damages for injuries Kristine sustained when the motorcycle she was operating was struck by a car driven by Dale Bruns and owned by his wife. We affirmed a summary judgment for Bruns on the claims of Kristine's mother, who alleged she had sustained mental suffering and emotional distress as a result of Bruns's conduct. This separate declaratory judgment action, brought by Bruns and his wife against the automobile liability insurers of the Bruns car, presents the question whether the insurers were obligated to defend and provide coverage when they received no notice of the collision until twenty-eight months after it occurred. The district court entered a declaratory judgment for the insurers, and we affirm.

The trial court tried the action as an equitable proceeding, and we therefore review the evidence de novo. *See Citizens Savings Bank v. Sac City State Bank*, 315 N.W.2d 20, 24 (Iowa 1982); Iowa R.App. P. 4. The collision occurred in the early morning hours of June 19, 1981, when Bruns, turning left into the driveway of the seed company where he was employed, drove his wife's car into the path of the oncoming motorcycle operated by Kristine. Bruns concedes that he was "probably intoxicated," and a subsequent emergency room blood test indicated Kristine was also under the influence of alcohol. Bruns heard a thud on impact and stopped his car long enough to ascertain what he had hit. Concerned that he might be arrested and convicted of a second drunk driving offense, Bruns left the accident scene and hid his damaged car in a nearby company building. He then watched from his unlighted office as motorists stopped to assist the injured motorcyclist. Kristine was soon transported by ambulance to a hospital. Waterloo police officers conducted an on-scene traffic investigation complete with measurements, photographs and recordation of their observations, and they also took some recorded statements and obtained names of the passers-by who had come upon the scene. The officers discovered no witnesses to the accident itself. Once they completed their investigation, the officers cleared the collision site of debris and left. When everyone was gone, Bruns backed his car into a company warehouse, parking it as close to the wall as he could in order to conceal the right rear damage. He then drove home in a company vehicle, told his wife about the accident, and went to sleep.

The following morning, an employee at the seed company received a phone call from the Waterloo police department inquiring if anyone there drove a beige 1977 or 1978 Buick Riviera. The employee, who knew that Bruns drove a bronze car matching that description, indicated that he would check the parking lot. He then explored the company grounds, discovered the Bruns vehicle in the warehouse and questioned Bruns about it. Bruns divulged to him the events of the night before and together they moved the car to another garage. The car remained there until October or November of 1982 when Bruns, who had relocated, drove it to his home in Nebraska and had it repaired. In June of 1983 he sold the car.

Neither Bruns, his wife, nor the seed company employee notified anyone of Bruns's involvement in the accident until August of 1983. At that time the employee in whom Bruns had confided told the Waterloo police department what he knew about the accident. The ensuing investigation resulted in the filing of criminal charges against Bruns. In addition, Kristine and her mother filed their damage action against Bruns and his wife. Not until he was served with process concerning that civil action did Bruns notify the defendant insurers Hartford Accident & Indemnity Co. (Hartford) and the St. Paul Fire & Marine Insurance Co. (St. Paul) of the accident that had occurred some twenty-eight months earlier. Both Hartford and St. Paul declined to defend the Brunses in the suit, alleging that their policies provided no coverage because the companies had not been given the required timely notice that an accident had occurred.

The Brunses filed the present action in equity against the two insurers seeking a declaration that their liability insurance policies provided coverage for the collision and resulting litigation. Kristine intervened in support of the Brunses' position and also contended that the insurance companies should be deemed estopped from relying on breach of notice provisions to defeat coverage. She based her estoppel claim on the combination of Brunses' conduct in concealing their identify from her

and the insurers' conduct in insuring Bruns knowing he had previously been arrested for driving while intoxicated and had a poor driving record.

Before trial commenced a district judge other than the trial court sustained the insurers' motion for summary judgment directed at Kristine's estoppel theories. After a bench trial the trial court entered judgment for both insurers declaring their obligations under the policies had been discharged when Brunses failed to give them satisfactory notice of the collision. The trial court found that the failure to give notice constituted a breach of the notice requirements in the policies, and it concluded the insurers had been prejudiced by the failure to give prompt notice. We first review the trial court's determination that the insurers were prejudiced by lack of notice and had no obligation under the policies, then the summary judgment court's rejection of Kristine's estoppel theories.

## I. *The Notice Provisions in the Policies.*

The notice provision in the St. Paul policy, under the heading "What You Must Do For Us," stated:

Here are a few things you'll have to do for us. Not only you, but anyone who's insured under this policy.

If there's an accident or incident that may be covered by this policy, notify us in writing as soon as possible. You can give this notice to any of our authorized agents.

Include all the information you have or can get.

If anyone makes any claim against you, notify us as soon as possible. If you're sued, send us copies of all suit papers, reports and documents. If we decide to enter the negotiations or suit, help us in any way you can.

We're not obligated to pay for your loss unless you do all this.

The pertinent language in Hartford's policy provided:

## PART E

### DUTIES AFTER ACCIDENT LOSS

We must be notified promptly of how, when and where the accident or loss happened. Notice should also include the names and addresses of any injured persons and of any witnesses. A person seeking any coverage must:

1. Cooperate with us in the investigation, settlement or defense of any claim or suit.

2. Promptly send us copies of any notices or legal papers received in connection with the accident or loss.

3. Submit, at our expense and as often as we reasonably require, to physical examinations by physicians we select.

4. Authorize us to obtain medical reports and other pertinent records.

5. Submit a proof of loss when required by us.

. . . .

## PART F

### GENERAL PROVISIONS

. . . .

### LEGAL ACTION AGAINST US

No legal action may be brought against us until there has been full compliance with all the terms of this policy.

. . . .

The trial court determined that the notice provision in the St. Paul policy constituted a condition precedent to liability of the company under the policy, and the persons claiming coverage were required to prove that failure to give notice to St. Paul either was excused or caused no prejudice. That holding squares with the rationale of *Henderson v. Hawkeye-Security Insurance Co.*, 252 Iowa 97, 106 N.W.2d 86 (1960), where we explained the notice provision was written as a condition precedent to policy coverage. We held that the persons claiming coverage, not the insurer, must bear the burden of proof on the issue of prejudice, explaining:

> By the great weight of authority in this country where an insurance policy provides that the insured shall give notice and furnish proofs of loss within a reasonable time, and this is made a condition precedent to the right to bring an action on the policy, no recovery can be had thereon unless some legal justification or excuse for the delay appears. [Citing cases from many jurisdictions].

> Definite, basic, specific and reasonable provisions made conditions precedent to action on the policy cannot be ignored, and an unexcused breach of these conditions cannot be viewed in any other light than a breach of contract which will defeat recovery upon claim made thereunder.

> . . . .

> We are satisfied the condition in plaintiff's policy requiring reasonable notice is one of the basic and essential provisions of the contract, and that it is of the essence of the agreement. It is the only avenue by which unjust claims can be successfully denied or defended. Unless given notice within a reasonable time, evidence could be lost and key witnesses never discovered. Substantial compliance with such a condition must be shown by claimant, or he must show such failure was excused, or that the requirements of the condition were waived, or that such failure to comply was not prejudicial to insurer in order to maintain the action against insurer. We conclude, therefore, that unless this burden has been carried by claimants, prejudice to insured must be presumed.

*Id.* at 103–07, 106 N.W.2d at 90–92; *accord Western Mut. Ins. Co. v. Baldwin*, 258 Iowa 460, 472, 137 N.W.2d 918, 925 (1965). *See generally* Annotation, *Modern Status of Rules Requiring Liability Insurer to Show Prejudice to Escape Liability Because of Insured's Failure or Delay in Giving Notice of Accident or Claim, or in Forwarding Suit Papers*, 32 A.L.R.4th 141 (1984).

While the trial court properly placed on Brunses and Kristine the burden to prove that lack of notice did not prejudice St. Paul, it determined that the somewhat different wording of the Hartford notice provision placed on Hartford the burden to

prove prejudice. The trial court did not identify the specific language differences in the two policies that caused one notice provision but not the other to be treated as a condition precedent to coverage. We note, however, that the trial court did not refer to the part F "General Provisions" quoted above when it set forth in its decision what it deemed to be the relevant provisions of the Hartford policy. We need not decide, however, whether the trial court properly allocated the burden of proof on the question of prejudice. Assuming without deciding that St. Paul and Hartford both were required to establish prejudice, we agree with the trial court that the evidence clearly demonstrates the insurers were prejudiced, discharging both companies from any liability coverage for the Bruns collision with Kristine's motorcycle.

## II. *Prejudice.*

■ The trial court well documented the evidence supporting its finding of substantial prejudice resulting from the Brunses' failure for twenty-eight months to give notice of the collision. We arrive at the same conclusion from our de novo review of the entire record.

The insurance companies were denied access to potential witnesses. They were deprived of immediate descriptions of the accident scene, the opportunity to photograph the scene as it then existed, and the opportunity to inspect the vehicles involved in the collision. Any descriptions or photographs obtained twenty-eight months after the collision would necessarily be less vivid and of considerably diminished value. The insurers were unable to make timely inquiry into what Kristine and Bruns had been doing up to the time of the accident and could not adequately investigate her injuries and the damages she allegedly incurred.

Granted the law enforcement officers' report of the accident was available to the insurers when they finally learned of the collision involving Bruns. Nevertheless the focus of the officers' investigation was identification of the hit-and-run driver rather than analysis of the comparative fault of the two vehicle operators or determination of the specific injuries sustained by Kristine. While the official report identified two persons at the scene of the accident when the officers arrived, there is no indication the officers promptly interviewed them, made a record of the interviews, or followed up on .these leads.

We conclude, as did the trial court, that St. Paul and Hartford were discharged from any obligation to provide coverage for the collision, because they were not notified promptly about the collision and that breach of the policy provisions prejudiced both companies.

## III. *Estoppel.*

Kristine contends the insurers should be estopped from denying coverage for essentially three reasons: Bruns's conduct was unconscionable; the insurers' agent sold the policies knowing of Bruns's poor driving record; and "it would be manifestly unjust to hold [Kristine] responsible for the delayed notice." In rejecting these estoppel theories the summary judgment court noted that Kristine had cited no authority from Iowa or other jurisdictions supporting application of an estoppel theory to the circumstances of this case. Kristine has not explained what elements compose her estoppel cause of action nor what public policy it would serve.

■ A person basing a cause of action on equitable estoppel or promissory estoppel must demonstrate justifiable reliance on the defendant's promise, representation, or concealment of material facts. *See Merrifield v. Troutner*, 269 N.W.2d 136, 137 (Iowa 1978). Nothing in this record suggests that Kristine relied on the insurers in any way, so at least one element of her estoppel theory is certainly missing.

■ We add that public policy would not be served by this estoppel theory to the extent that it would cause automobile liability insurers to refuse to insure licensed drivers whose driving records were imperfect. Policy provisions requiring prompt notice of insured events make sense, because they enable insurers promptly to in-

vestigate and fairly to dispose of claims of third parties as well as claims of their own insureds.

The summary judgment court correctly rejected Kristine's estoppel theories. Because we have upheld the declaratory judgment entered by the trial court in favor of the insurers, we need not address their alternative contention that the Brunses should be denied coverage simply because they intentionally, and in a bad faith effort to avoid criminal prosecution, hid the facts of the accident from the insurers.

AFFIRMED.