**CONSTRUCTION TECHNOLOGY, INC., Plaintiff,**

v.

**The LOCKFORMER COMPANY, INC., Defendant.**

**CONSTRUCTION TECHNOLOGY, INC., Plaintiff,**

v.

**The LOCKFORMER COMPANY, INC., Met–Coil Systems Corp., Mechanical Data, Inc., Estimation, Inc., Lion International Company, d/b/a Orange Systems, and Orange Systems/Lockformer, Defendants.**

**Nos. 86 Civ. 0457 (JSM), 88 Civ. 0742 (JSM).**

United States District Court, S.D. New York.

Nov. 2, 1990.

Opinion on Motions for Judgment Notwithstanding Verdict Sept. 24, 1991.

George E. Badenoch, Edward W. Greason, John Flock, Mark D. Giarratana, James E. Geringer, Donna L. Angotti and Kenyon & Kenyon, and Irwin P. Underweiser and Underweiser & Underweiser, New York City, for plaintiff Const. Technology, Inc.

Sheldon Karon, Lawrence A. Wojcik, Sharon R. Barner, Kevin Tottis and Keck, Mahin & Cate, Chicago, Ill., Victor G. Savikas and Keck, Mahin & Cate, Los Angeles, Cal., and Robert J. Schecter and Keck, Mahin, Cate & Koether, New York City, for defendants Lockformer Co. and Met–Coil Systems Corp.

Clarence J. Fleming, Robert M. Mason and Jones, Day, Reavis & Pogue were also counsel for defendants Lockformer Co. and Met–Coil Systems Corp. prior to trial.

Gary S. Jacobson, Kristine M. Reddington and Jacobson & Triggs, New York City, for defendant Mechanical Data, Inc.

Stephen H. Galebach, Gregory J. Granitto and West & Galebach, Gaithersburg, Md., and David J. Grais, Kaare Phillips and Grais & Phillips, New York City, for defendant Lion Intern. Inc., d/b/a Orange Systems, Inc.

Robert R. Bowie, Jr., Towson, Md., for defendant Estimation Inc.

## MEMORANDUM OPINION AND ORDER

MARTIN, Jr., District Judge:

■ This matter is before the Court on three motions brought by certain defendants in the above-referenced actions. A fourth motion, brought by defendant The Lockformer Company, Inc. ("Lockformer"), for summary judgment as to the validity of the patents at issue in this litigation is addressed in a separate Opinion of the Court.

With respect to defendant Met–Coil Systems Corp.'s motion for summary judgment, the motion is denied. The record presents factual issues as to the extent of the knowledge Metcoil had as a result of the supervision its officers exercised over the officers and employees of Lockformer who were directly involved in this project.

The motion of defendant Estimation, Inc. for summary judgment and the motion of defendants Met–Coil and Lockformer for partial summary judgment and for sanctions are also denied. The record again presents factual issues that must be resolved at trial.

SO ORDERED.

## ON MOTIONS FOR JUDGMENT NOTWITHSTANDING VERDICT

There are presently pending before the Court motions of the defendants for judg-

ment notwithstanding the verdict or, alternatively, for a new trial. Additionally, certain legal issues that were left open at trial remain for decision by the Court. Furthermore, subsequent to the jury's verdict, plaintiff and defendant Lion International Company d/b/a Orange Systems entered into a settlement agreement in which they seek a judicial determination of that defendant's equitable share of the liability found by the jury.

*The Motions For Judgment N.O.V. Or A New Trial*

In large measure, the motions of the defendants simply seek to reargue matters that the Court decided during trial or which the jury resolved in the plaintiff's favor. Since all of these issues were addressed during the trial, the Court will not discuss them here but simply reaffirms the rulings that it made during the trial. The evidence was clearly sufficient to go to the jury with respect to each of the claims submitted to it, and there is no basis to set aside the verdicts reached by the jury, except as to the damages awarded on the theft of trade secrets and unfair competition claims.

■ The defendants argue that the evidence was insufficient to support the jury's award of $1.2 million for the misappropriation of CTI's trade secrets. The defendants also contend that there was no basis for the jury to award an additional $750,-000 on the unfair competition claim and point out that the jury's determination that the unfair competition damages should be added to the patent damages but not to the trade secret damages is inconsistent with its verdict that the trade secret damages were not in addition to the patent damages. The Court finds that there is merit to these arguments to the extent that the evidence was not sufficient to justify an award in excess of $406,260 on the trade secrets claims. The Court also finds that it was inconsistent to add the unfair competition damages to the patent damages but not to the trade secret damages.

In his summation, plaintiff's counsel argued that with respect to the theft of trade secrets the jury could find that plaintiff had a loss of profits totalling $406,260.

The Court agrees that the evidence to which counsel alluded supports an award of that figure, but in the Court's view, that sum represents the outer limit of the amount of damage for theft of trade secrets that a jury could reasonably find. There is not sufficient proof in the record to sustain any higher award. The Court can also find no rational basis that would justify adding the unfair competition damages to the patent damages while at the same time including them in the trade secret damages which the jury found were not to be added to the patent damages.

Thus, the Court concludes that the damages with respect to both the trade secret and the unfair competition claims should be remitted to the amount of $406,260 which would not be in addition to the damages awarded on the patent infringement claim. Therefore, the Court will order a new trial with respect to damages on the trade secret and unfair competition claims unless within two weeks of the date of the entry of this Order plaintiff advises the Court that it would accept a remitter that reduces its award to the amount of $406,260 on both theft of trade secret claim and the unfair competition claim and which further provides that the $406,260 is included in the damages found with respect to the patent infringement claim. In all other respects the motions of the various defendants to set aside the verdict or for a new trial are denied.

*Patent Issues Left Open For Post–Trial Determination*

The matters left open for consideration after the trial are whether (1) the patented invention involves a non-patentable subject matter; (2) the 4,554,635 patent is invalid for double patenting; and (3) the patent is invalid because of inequitable conduct by the plaintiff in processing the patent application.

■ Turning first to the claim that the patent involves solely mathematical algorithms, which constitute a non-patentable subject matter, the Court finds that the patents in question do far more than simply set forth a mathematical algorithm. The

635 patent involves both a method and apparatus for producing customized patterns for ventilating duct fittings and the 4,551,810 patent describes a method and apparatus for partially automatically designing a heating and ventilating network. Although the inventions in each case make use of a mathematical algorithm, they clearly do much more. Thus, this case is similar to *Diamond v. Diehr,* where the Supreme Court rejected an argument similar to defendants', stating: "[Plaintiff's] process admittedly employs a well-known mathematical equation, but they do not seek to preempt the use of that equation. Rather, they seek only to foreclose from others the use of that equation in conjunction with all of the other steps in their claimed process." *Diamond,* 450 U.S. 175, 187, 101 S.Ct. 1048, 1057, 67 L.Ed.2d 155 (1981). The same situation is presented here and, therefore, the Court concludes that the patent at issue does involve a patentable subject matter.

■ With respect to defendants' claim that the 635 patent is invalid due to double patenting, the Court notes at the outset that "there is a heavy burden of proof on one seeking to show double patenting." *Carman Industries, Inc. v. Wahl,* 724 F.2d 932, 940 (Fed.Cir.1983). While it is true that the 810 and 635 patents have many elements in common, they do not describe the same invention. The 635 patent is directed to producing patterns for computer assisted fabrication of duct work, whereas the 810 patent is concerned with the designing of heating, air-conditioning and ventilation duct work. There is no double patenting nor is there "obviousness double patenting" presented in this case.

■ Defendant Lockformer also contends that the Court should determine that CTI's patents are invalid because of inequitable conduct by Mr. Levine in failing to present to the Patent Office information that was "material to the examination of the application." 35 C.F.R. § 1.56(a). The Court of Appeals for the Federal Circuit set forth the standards for judging a claim of inequitable conduct in the case of *Halliburton Co. v. Schlumberger Technology Corp.,* 925 F.2d 1435, 1439-40 (Fed.Cir. 1991) (footnotes and citations omitted):

The doctrine of inequitable conduct requires a trial court to undertake a two-step analysis. The trial court must discern whether the withheld references satisfy a threshold level of materiality. The court must also determine whether the applicant's conduct satisfies a threshold showing of intent to mislead.... Next, assuming satisfaction of the thresholds, the trial court must balance materiality and intent.... The more material the omission, the less culpable the intent required, and vice versa.... The trial court has discretion to determine inequitable conduct.

■ Lockformer rests its claim of inequitable conduct primarily on Levine's failure to disclose pre-July 28, 1981 sales literature and related sales activity. Even if the Court were to accept the argument of Lockformer that these items would be material to the patent examiner, the Court finds no basis to conclude that Mr. Levine intended to mislead the Patent Office. Nothing leads the Court to infer that Mr. Levine deliberately failed to disclose his own sales literature or the fact that he had taken orders for his system before he had reduced his invention to practice. At the trial, the parties hotly contested the issue of whether or not Mr. Levine's invention had been reduced to practice prior to July 28, 1981, and the jury found that it was not. The Court agrees with that determination and concludes further that since Mr. Levine had a reasonable belief that his invention was not reduced to practice before July 28, 1981, he had no reason to believe that he was required to disclose the previous sales activities and literature to the Patent Office.

Nor is there any reason to conclude that Mr. Levine attempted to mislead the patent examiner by not specifically mentioning the Compuduct, Duct Magic, or Compass systems. Mr. Levine was cross-examined at trial about these issues, *see* Tr. 371-391, 409-412, and the Court finds credible the explanations he gave concerning the disclosures he made. All of the above issues

were explored during the trial and there is no need for a further hearing on these issues since the record before the Court is sufficient to establish that Mr. Levine did not intentionally attempt to mislead the Patent Office.

As to the claim that Levine engaged in inequitable conduct in failing to disclose the cybernation CFC 150 system, two points should be noted. One, the fact that Lockformer did not consider raising this during the course of the trial despite the fact that the general issue was explored during the cross-examination of Mr. Levine suggests that the true impact of this material is substantially less than Lockformer now urges. Second and more important, Mr. Levine in his continuation in part application filed in June 1983 clearly stated, "It must also be noted that other optimization schemes known in the art *may also be utilized....* For example, the 'outside rectangle' technique wherein the rectangle which each particular pattern fits is compared and optimized with the others."

Since Mr. Levine advised the Patent Office of the outside rectangle technique, it cannot be concluded that he attempted to mislead them by not referring specifically to the cybernation CFC 150 system.

In sum, the Court finds that Mr. Levine did not engage in inequitable conduct in the processing of his patent application.

*Enhanced Damages*

■ Next, we turn to the issue of whether the damage award in this case should be increased. Here, the jury determined that Lockformer engaged in a wilful violation of plaintiff's patent rights. The jury's finding of wilfulness is a sufficient basis for classifying the case as "exceptional" so as to justify the award of attorneys' fees under 35 U.S.C. § 285. As the Court of Appeals for the Federal Circuit stated in *Modine Manufacturing Co. v. Allen Group, Inc.*, 917 F.2d 538, 543 (Fed.Cir.1990), *cert. denied,* —— U.S. ——, 111 S.Ct. 2017, 114 L.Ed.2d 103 (1991), "[I]ndeed, when a trial court denies attorney fees in spite of a finding of willful infringement, the Court must explain why the case is *not* 'exceptional' within the meaning of the statute."

In the present case, the Court finds nothing in the record that would justify the exercise of its discretion to deny plaintiff attorneys' fees. The jury's finding that the defendants engaged in wilful patent infringement was coupled with a finding that the defendants also engaged in the theft of plaintiff's trade secrets and in unfair competition involving false statements concerning the plaintiff's product. In addition, defendants' conduct of this litigation, even if it did not on its own justify the award of counsel fees, certainly does not lead the Court to exercise any discretion it might have in defendants' favor.

The defense tactics in this case were not those that one would expect to find if the defendants' sole objective was to obtain a prompt resolution of a close legal issue. Rather, the defendants engaged in a course of litigation strategy designed to delay and frustrate the plaintiff's attempt to secure a trial of this action. Although this Judge was only assigned to this case in the middle of 1990 after a substantial part of the discovery had been concluded, I have conferred with Judge Mukasey to whom this case was assigned during the earlier stages. We both are of the view that the defendants here subjected the plaintiff to excessive motion practice in which there were needless attempts to relitigate issues that previously had been decided. Indeed this Court has noted previously on the record its conclusion that the defendants have engaged in tactics designed to delay the prompt resolution of this case. In these circumstances an award of attorneys' fees is appropriate.

■ The next issue is whether or not the Court should award enhanced damages. Here the jury's determination that the infringement was wilful could justify an increase in damages up to a trebling of plaintiff's actual damages. In determining whether increased damages should be awarded, three factors are to be considered: (1) "whether the infringer deliberately copied the ideas or designs of another;" (2) whether the infringer knew or should have known of the plaintiff's patent protection and "reasonably investigated the

scope of the patent and formed a good faith belief that the patent was invalid or that it was not infringed;" and (3) "the infringer's behavior as a party to the litigation." *Lam, Inc. v. Johns–Manville Corp.*, 668 F.2d 462, 475 (10th Cir.1982), *cert. denied*, 456 U.S. 1007, 102 S.Ct. 2298, 73 L.Ed.2d 1302 (1982).

 Here the jury made a finding of wilful infringement which was amply supported by the record including evidence that the defendant attempted to misappropriate plaintiff's trade secrets. The defendant's contention that it relied on the advice of counsel was rejected by the jury. The April 10, 1986 letter relied on by defendant and a second letter in 1988 are not the type of authoritative opinions upon which a good faith reliance on invalidity may be founded. *See Kori Corp. v. Wilco Marsh Buggies and Draglines*, 761 F.2d 649, 656 (Fed.Cir.1985), *cert. denied*, 474 U.S. 902, 106 S.Ct. 230, 88 L.Ed.2d 229 (1985). The April 10, 1986 letter set forth no facts upon which it was based. It was a letter prompted by an SEC filing not an inquiry by defendant seeking an opinion as to the validity of plaintiff's patent. The 1988 letter was also deficient in failing to set forth the detailed basis for counsel's opinion and was no more than a "a conclusory account of defense counsel's aspirations for winning an infringement suit without any supporting reasons" and therefore not the type of opinion which would establish a defense of good faith reliance on counsel. *See Kori Corp.*, 761 F.2d at 656.

 As to the third factor—the infringer's behavior as a party to the litigation—it is appropriate to cite here the language of the Court in *Warren v. White & Wyckoff Manufacturing Co.*, 39 F.2d 922 (S.D.N.Y. 1930), which was quoted with approval in *Saf–Gard Products, Inc. v. Service Parts, Inc.*, 491 F.Supp. 996 (D.Ariz.1980):

> [P]laintiff has found it necessary to institute this suit to bring the defendant to book, and it seems to me that, the defendant having led the plaintiff a dance over the matter, it, and not the plaintiff, ought to be made to pay the fiddlers and the scot.

As noted above, the defense here sought to delay as much as possible the prompt trial of this action. In addition, the conduct of the defendants both at trial and in these post-trial motions, in raising every conceivable defense, not only underscores a lack of faith in many of the defenses raised but also supports the conclusion that the purpose of raising these multiple defenses was to delay a prompt resolution of this matter.

Thus, this combination of circumstances clearly justifies an enhancement of the damages found by the jury. Given the size of the jury's award and the fact that the plaintiff has also been awarded punitive damages with respect to other aspects of the conduct of the defendants in this case, and in light of the fact that there was no evidence that the defendants used plaintiff's trade secrets to create the Vulcan system, the Court concludes that it is appropriate to double rather than treble the actual damages awarded to plaintiff and to award plaintiff's fees and costs.

### The Settlement With Orange Systems

Also before the Court is a proposed stipulated Order of Compromise and Dismissal pursuant to which plaintiff is settling its dispute with the defendant Lion International Company d/b/a Orange Systems. The other defendants object to this Order to the extent that it seeks to have the Court determine Orange Systems' equitable share of the liability found by the jury. The Court has considered those objections and finds them to be without merit.

 With respect to the patent infringement claim, the Court agrees with the decision of the United States District Court for the Northern District of Texas in *Motorola, Inc. v. Varo, Inc.*, 656 F.Supp. 716, 717–18 (N.D.Tex.1986) that there is no right of contribution in patent cases. Therefore, the only impact of the Orange Systems' settlement is to reduce plaintiff's right to recover against Lockformer and Met–Coil by an amount necessary to avoid more than one full recovery for the same injury.

■ With respect to the settlement of the claims of theft of trade secrets and unfair competition, the settlement provides that plaintiff's release of defendant Orange Systems will not release more than the greater of the amount paid by Orange Systems for such release or a one-fourth share of the compensatory damages ultimately awarded. The non-settling defendants contend that the Court cannot make that determination because they have not waived their right to have the jury allocate liability pursuant to § 15–108 of the New York General Obligations Law. This argument is without merit.

Section 15–108 of the General Obligations Law in its present form was adopted to encourage settlements by less than all of the joint tortfeasors who might be liable on a particular claim. *Cover v. Cohen*, 113 A.D.2d 502, 509, 497 N.Y.S.2d 382, 387 (App.Div.1985). Such a settlement "reduces the claim of the releasor against the other tortfeasors to the extent of any amount stipulated by the release or the covenant, or in the amount of the consideration paid for it, or in the amount of the consideration paid for it, or in the amount of the released tortfeasors equitable share of the damages ... whichever is the greatest." N.Y.Gen.Oblig.Law § 15–108. However, the New York courts have made clear that defendants seeking to take advantage of the equitable share alternative must present the issue of the equitable apportionment of damages to the jury for its consideration. Otherwise they risk having the amount by which they are entitled to have the judgment reduced limited to the actual amount paid in settlement. *See Audrieth v. Parsons Sanitarium, Inc.*, 588 F.Supp. 1380, 1380–81 (S.D.N.Y.1984); *Bonnot v. Fishman*, 88 A.D.2d 650, 650–51, 450 N.Y.S.2d 539, 540 (App.Div.1982), *aff'd*, 57 N.Y.2d 870, 456 N.Y.S.2d 47, 442 N.E.2d 445 (1982); *Retzel v. State*, 94 Misc.2d 562, 570 n. 9, 405 N.Y.S.2d 391, 397 n. 9 (Ct.Cl.1978).

Had the defendants desired to have their respective liability as joint tortfeasors determined by the jury they should have submitted a request to have that issue placed before the jury. In failing to do so, they waived any right to have such a determination made by the jury. Clearly, considerations of judicial economy could not tolerate a result which would require that this lengthy case be retried to a different jury for the sole purpose of apportioning the liability among the various tortfeasors who participated in the trial.

■ Having heard all of the testimony at the trial, the Court is in a position to assess the "equitable apportionment" of liability among the defendants. In this case, the provision of the settlement agreement that the Orange Systems settlement shall reduce the liability of the other defendants for theft of trade secrets and unfair competition by one-fourth of the compensatory damages ultimately awarded is, in fact, an equitable apportionment among these defendants.

SO ORDERED.