MET–COIL SYSTEMS CORPORATION
and The Lockformer Company,
Appellants,

v.

COLUMBIA CASUALTY COMPANY,
Hartford Accident and Indemnity Company, International Insurance Company,
Pacific Employers Insurance Company,
and Home Insurance Company, Appellees.

No. 93–1204.

Supreme Court of Iowa.

Nov. 23, 1994.

Richard S. Fry, Diane Kutzko and Douglas R. Oelschlaeger, Shuttleworth & Ingersoll, P.C., Cedar Rapids, for appellants.

Stuart C. Levene, Ford Marrin Esposito Witmeyer & Gleser, New York City, and David J. Dutton, Dutton, Braun, Staack, Hellman & Iversen, Waterloo, for appellee Columbia Cas. Co.

Frank A. Comito, Terence L. McAtee and Kent A. Gummert, Frank A. Comito, P.C., Des Moines, for appellee Hartford Acc. and Indem. Co.

Glenn L. Smith, Finley, Alt, Smith, Scharnberg, May & Craig, P.C., Des Moines, for appellee Intern. Ins. Co.

Robert M. Jilek, Simmons, Perrine, Albright & Ellwood, Cedar Rapids, and Paul R. Koepff and Stephen V. Kovarik, O'Melveny and Myers, New York City, for appellee Pacific Employers Ins. Co.

Diane M. Stahle and William J. Koehn, Davis, Hockenberg, Wine, Brown, Koehn & Shors, P.C., Des Moines, for appellee Home Ins. Co.

Considered by McGIVERIN, C.J., and HARRIS, LARSON, LAVORATO, and SNELL, JJ.

McGIVERIN, Chief Justice.

This case raises issues regarding whether plaintiffs, Met–Coil Systems Corporation and the Lockformer Company, the insured, substantially complied with the notice provisions of several insurance policies issued to the insured at various times by defendant insurance companies. The district court granted defendant insurers' motions for summary judgment, ruling that the insurers were prejudiced as a matter of law due to the insured's failure to comply with the policies' notice provisions and that the insured, therefore, had no liability coverage under the policies. We affirm the result and judgment of the district court.

I. *Background facts and proceedings.* Met–Coil Systems Corporation and its subsidiary, the Lockformer Company, jointly the insured or Met–Coil, is a business engaged in the design, manufacture, and marketing of computerized systems for the estimating, design, and production of heating, ventilating, and air-conditioning duct work.

Between the years 1981 and 1988, the insured purchased various types of liability insurance from the defendants, Columbia Casualty Company (Columbia), Hartford Accident and Indemnity Company (Hartford), International Insurance Company (International), Pacific Employers Insurance Company (PEIC), and Home Insurance Company (Home), collectively the insurers, through an insurance broker, Bayly, Martin & Fay of Connecticut, Inc. and its then executive vice president, Richard Newman (broker).[1]

The purchased insurance was for general liability primary or umbrella coverage, and consisted of varying policies effective during different periods of time. Although the language in the various insurance contracts differed, all of the policies required the insured to provide prompt notice directly to the insurers with respect to claims made or suits brought against the insured.

A. *Underlying CTI suits.* In 1986, Lockformer was sued in the United States District Court for the Southern District of New York by Construction Technology, Inc. (CTI) based on a claim of patent infringement. *Construction Technology, Inc. v. Lockformer Co.*, No. 86 Civ. 0457 (S.D.N.Y. filed Jan. 14, 1986). CTI filed a second suit against Met–Coil and Lockformer in 1988 claiming they were guilty of unfair competition, false advertising, deceptive trade practices, misappropriation of confidential information, inducing breach of contract, interference with advantageous business relations, and violation of the Racketeer Influenced and Corrupt Organizations Act of 1970. *Construction Technology, Inc. v. Lockformer Co.*, No. 88 Civ. 0742 (S.D.N.Y. filed Feb. 2, 1988).

In April 1986, Met–Coil advised its insurance broker of the first CTI suit. Also, in addition to other alleged forms of notice to its insurance broker in 1988, in late November 1990 Met–Coil asked its insurance broker to review the two CTI suits and to determine whether any insurance coverage existed for the claims asserted against them.

---

1. Newman was with Bayly, Martin & Fay as an insurance broker and agent through May 1988. At that time, Newman left Bayly, Martin & Fay, took Met–Coil's account with him, and began employment with Fred S. James & Company of Connecticut, whose name was subsequently changed to Sedgwick James & Company. These persons will be referred to collectively as Met–Coil's insurance broker.

In that same year, the two CTI lawsuits against Met–Coil were consolidated for trial and, on March 13, 1991, a verdict was returned against Met–Coil which ultimately resulted in a judgment totaling $18,481,830. This total judgment included damages for unfair competition and trade secret violations, and doubled damages for willful patent infringement. *See Construction Technology, Inc. v. Lockformer Co.,* 781 F.Supp. 195, 200–01 (S.D.N.Y.1990). Based in part on the conduct of Met–Coil and its attorneys, the court also included in the total judgment an award against Met–Coil for costs and attorney fees. *Id.* Met–Coil itself expended in excess of $4 million on its defense.

Although the exact dates vary, only one of defendant insurers received notice of the CTI litigation prior to the federal jury's rendering of the adverse verdict against Met–Coil. Columbia received written notice on February 7, 1991, four days before the underlying CTI action was to be tried in New York. Hartford, PEIC, and Home received written notice of the CTI litigation on or about March 22, 1991, over five years after the initial lawsuit had been filed, three years after the companion suit had been commenced, and nine days after the adverse jury verdict had been rendered. The form of the notice was correspondence from Met–Coil's insurance broker to either the defendant insurers or their agents.

International, however, has never received written notice from the insured regarding potential claims arising from the CTI litigation and judgment. International first received actual notice of such claims for coverage under its policies on or about April 14, 1992 when served with notice of the present action.

B. *Present suit.* On April 14, 1992, the plaintiff Met–Coil filed the present action against its insurers, Columbia, Hartford, PEIC, International, and, subsequently, Home, for coverage for the New York federal court judgment entered against it and for insured's costs and attorney fees incurred by it in the underlying CTI litigation. Met–Coil conceded during oral argument of the present appeal that in early 1992 Met–Coil and CTI settled the judgment.

Defendants Columbia, Hartford, PEIC, International, and Home moved for summary judgment, *see* Iowa R.Civ.P. 237, alleging noncompliance with the insurance policies' provisions and thereby lack of coverage for Met–Coil's claims arising from the CTI litigation and judgment.

Met–Coil resisted, contending that it had substantially complied with the defendant insurers' policies' notice provisions by giving notice to its insurance broker who was allegedly an agent of the insurers; that it had a valid excuse for any late notice; that defendant insurers had waived the notice requirements; and that fact issues existed concerning reasonableness of insured's compliance and prejudice to insurers which precluded disposition of the case by summary judgment.

The district court granted the defendant insurance companies' motions for summary judgment. The court concluded that insured's unexcused and unjustifiable failure to provide defendant insurers with reasonable notice of the CTI suits was a breach of the policies' provisions, that defendant insurers were substantially prejudiced by insured's noncompliance as a matter of law, and that defendant insurers did not have to provide Met–Coil with liability coverage for any claims arising from the CTI litigation and judgment.

Met–Coil appealed the district court's grant of summary judgment to defendant insurers.

The record consisted of the pleadings, motions for summary judgment and resistances, affidavits, and exhibits. *See* Iowa R.Civ.P. 237(c).

■ II. *Scope of review.* We will uphold a grant of summary judgment when no material fact is at issue and the moving party is entitled to judgment as a matter of law. Iowa R.Civ.P. 237(c); *Kapadia v. Preferred Risk Mut. Ins. Co.,* 418 N.W.2d 848, 849 (Iowa 1988). When we review a grant of summary judgment, the question is whether the moving party demonstrated the absence of any genuine issue of material fact and showed entitlement to judgment on the mer-

its as a matter of law. *Kapadia*, 418 N.W.2d at 849 (citations omitted).

In determining whether the movant has met this burden, we review the record in the light most favorable to the party opposing summary judgment. *Downs v. A & H Constr., Ltd.*, 481 N.W.2d 520, 522 (Iowa 1992). If the conflict set forth in the record concerns only the legal consequences flowing from undisputed facts, we will uphold the entry of summary judgment. *Farm Bureau Mut. Ins. Co. v. Milne*, 424 N.W.2d 422, 423 (Iowa 1988).

III. *Compliance standard and proof burden regarding notice provisions of insurance policies which are a condition precedent to coverage.* When a notice provision is written as a condition precedent to policy coverage in an insurance contract, substantial compliance with such a condition must be shown by the claimant. *Bruns v. Hartford Accident & Indem. Co.*, 407 N.W.2d 576, 579 (Iowa 1987) (citing *Henderson v. Hawkeye–Sec. Ins. Co.*, 252 Iowa 97, 103–07, 106 N.W.2d 86, 89–92 (1960)). Absent the claimant proving substantial compliance, in order to maintain the action against the insurer the claimant must show that failure to comply was excused, or that the requirements of the condition were waived, or that failure to comply was not prejudicial to the insurer. *Bruns*, 407 N.W.2d at 579 (citing *Henderson*, 252 Iowa at 107, 106 N.W.2d at 92).

Unless the claimant meets this burden of showing substantial compliance, or excuse from compliance, or waiver of requirement, or lack of prejudice to the insurer, prejudice to the insurer must be presumed. *American Guar. & Liab. Ins. Co. v. Chan-*

*dler Mfg. Co.*, 467 N.W.2d 226, 228 (Iowa 1991); *Bruns*, 407 N.W.2d at 579 (citing *Henderson*, 252 Iowa at 106–07, 106 N.W.2d at 92); *Henschel v. Hawkeye–Sec. Ins. Co.*, 178 N.W.2d 409, 415 (Iowa 1970). Although this presumption of prejudice is rebuttable, unless it is overcome by a satisfactory showing of lack of prejudice, it will defeat the insured's recovery. *Henschel*, 178 N.W.2d at 415; *Henderson*, 252 Iowa at 107, 106 N.W.2d at 92.

Only when the insured has satisfactorily shown excuse or legal justification, such as reasonable mistake or trivial occurrence, does the burden to show actual prejudice fall upon the insurer. *Henschel*, 178 N.W.2d at 415–16 (citing *Henderson*, 252 Iowa at 106, 106 N.W.2d at 91).

A. *Substantial compliance with the policies' "notice of suit" provisions.* All of defendant insurers' contracts with Met–Coil contain a provision requiring prompt and direct notice of a suit to be given to the insurer[2] and language making compliance with this "notice of suit" provision a condition precedent to recovery. We agree with the district court that the insured failed to meet its burden of showing substantial compliance with these "notice of suit" provisions as a matter of law.

1. Although the language of the policies' "notice of suit" provisions varied somewhat, each notice provision generally required insured to notify the insurance company directly and promptly if a claim was made or a suit was brought against the insured by forwarding to the company any relevant legal documents.[3] The "notice of suit" provision in the Columbia primary coverage policies is representative of the "notice of suit" clauses in the

2. International issued two consecutive commercial umbrella policies running from October 26, 1986 through October 26, 1988 to insured. Although the language of these policies' "notice of suit" provisions is quite different from that found in any of the other insurance policies' "notice of suit" provisions, stating that the insured shall forward to the company suit papers when requested by the company, we conclude that prompt notice of a suit to International was required by International's policies because In-

ternational could not request suit papers unless it was first put on notice of the suit.

3. Home issued an excess liability insurance policy to insured for the time period of October 26, 1984 to October 26, 1985. This policy does not contain a specific "notice of suit" clause but has a "notice of occurrence" clause which contains the same language as the other insurance policies' "notice of suit" clauses.

other insurers' policies.[4] The Columbia "notice of suit" provision stated:

Insured's Duties in the Event of Occurrence, Claim or Suit

.   .   .   .   .

(b) If a claim is made or suit is brought against the insured, the insured shall *immediately forward to the Company* every demand, notice, summons or other process received by him or his representative.

(Emphasis added.)

In addition, each of defendants' insurance policies contained an "action" clause·or similar language which conditioned coverage under the policy upon the insured's compliance with all of the conditions of the policy.[5] Again, Columbia's "action" clause is representative of the relevant language contained in all of defendant insurers' policies. Columbia's "action" clause stated as follows:

**Action Against Company** No action shall lie against the company unless, as a condition precedent thereto, there shall have been full compliance with all of the terms of this policy....

Besides each of the policies themselves making the "notice of suit" provision a condition precedent, this court has recognized that a notice condition in an insurance contract is one of the basic and essential provisions of the contract and is of the essence of the agreement. *Henderson,* 252 Iowa at 107, 106 N.W.2d at 92.

2. The "notice of suit" provision in each of defendant insurers' policies clearly required Met–Coil to immediately forward a copy of the CTI suit papers directly to each of the insurance companies. Met–Coil has not presented any evidence demonstrating that it has met this requirement. The most Met–Coil has shown is that it sent correspondence to three of the five insurance companies on March 22, 1991 notifying them of the adverse jury verdict which had been rendered against it in the CTI litigation in a federal court in New York. Such token action five years after Met–Coil itself received notice of the first CTI suit certainly does not constitute substantial compliance with the notice conditions of defendants' insurance policies.[6] As the district court stated:

Simply put, this is a case where only one conclusion can reasonably be drawn from the undisputed facts. That conclusion is that the insured did not comply with the policy condition requiring notification of claims made against it....

■ Met–Coil maintains that it gave notice of the CTI suits to its insurance broker and that a genuine issue of material fact exists as to whether this broker was an authorized agent of defendant insurers for purposes of receiving notice. However, even if we assume that insured's broker is an authorized agent of defendant insurers and that he received reasonable notice of the CTI suits, the assumption does not prevent our conclusion

4. Columbia issued consecutive annual primary commercial casualty policies to insured starting in October of 1982 and ending on October 26, 1987. PEIC, whose policies' notice provisions are identical to those of Columbia, issued three consecutive excess comprehensive general liability insurance policies to insured starting on October 6, 1981 and running through October 26, 1994.

5. Neither International nor Home's policies contained specific "action" clauses, but each of their policies listed the notice provision as a "condition" to coverage under the policies.

6. Hartford issued four policies to insured: an excess umbrella liability insurance policy effective October 26, 1985 through October 26, 1986, a primary general liability policy effective October 26, 1986 through October 26, 1987, an excess umbrella liability policy effective October

26, 1986 through October 26, 1987, and finally, a multi-flex primary policy effective October 26, 1987 through October 26, 1988.

Each of the Hartford excess policies contained a provision, entitled a cooperation clause, requiring the insured to comply with the conditions found in the primary insurers' policies underlying the Hartford excess policies as a condition precedent to coverage under the Hartford excess policies. As was discussed above, each of the underlying primary insurers' policies contained a provision conditioning coverage on notice of a claim or suit being given immediately and directly to the insurance company. Since we have concluded that insured failed to substantially comply with these "notice of suit" provisions contained in each of the primary insurers' underlying policies, we consequently conclude that the insured failed to substantially comply with the cooperation clauses contained in Hartford's excess policies.

that Met–Coil failed to comply with the "notice of suit" provisions.

At most, the status of Met–Coil's insurance broker as an agent of defendant insurers for purposes of receiving notice is only relevant to insured's substantial compliance with the defendant insurance companies' policies' "notice of occurrence" provisions. Each of the "notice of occurrence" provisions provided that notice of an occurrence may be given to either the insurer or its authorized agent.[7]

The status of Met–Coil's insurance broker is not relevant, however, to its substantial compliance with the insurance policies' "notice of suit" conditions. As mentioned, the "notice of suit" conditions required Met–Coil to give prompt notice of claims and suits directly to the insurance companies; they did not provide the insured with the option of giving notice to the insurers' authorized agents. Simply stated, Met–Coil cannot rely upon any alleged notice of suit given to an alleged agent of defendant insurers, since the policies expressly obligated insured to give notice of suit directly to the insurance companies by immediately forwarding to them the relevant legal documents, which, as mentioned, Met–Coil did not do.

■ Met–Coil also maintains that the overall issue of its reasonableness in complying with the insurance policies' notice provisions is a factual issue which cannot be disposed of through summary judgment. We have recognized, however, that "where the facts are not in dispute, and the inferences are certain, [the question of whether timely notice was given] is a question of law for the court." *Estate of Linderholm v. State Auto. & Cas. Underwriters*, 169 N.W.2d 561, 564 (Iowa 1969) (citation omitted). Thus, we agree with the district court which stated:

[Where only] one conclusion can be reasonably drawn from the facts [the] question of compliance with a provision for notice is

one of law.... This court concludes there *is* only one conclusion which can be draw from the undisputed facts of this case. It is that the insured has not complied with the notice provisions of the contracts.

Other jurisdictions facing similar notice provisions and extreme noncompliance are in accord. *See, e.g., Marez v. Dairyland Ins. Co.*, 638 P.2d 286, 289 (Colo.1981) (failing to forward suit papers for two and one-half years was held a breach of insurance contract as a matter of law); *Structure Tone, Inc. v. Zurich Ins. Co.*, 193 A.D.2d 554, 597 N.Y.S.2d 702, 703 (1993) (affirming grant of summary judgment and holding three-year delay in forwarding written notice was unreasonable as a matter of law); *West American Ins. Co. v. Hardin*, 59 Ohio App.3d 71, 571 N.E.2d 449, 453 (1989) (affirming grant of summary judgment and holding essentially an eight-year delay in providing notice of accident unreasonable as a matter of law); *Busch Corp. v. State Farm Fire & Cas. Co.*, 743 P.2d 1217, 1218–20 (Utah 1987) (notifying insurance company of claim by filing suit against it five years after damages occurred and three years after underlying suit had been filed constituted noncompliance with notice provisions as a matter of law and warranted affirmance of summary judgment).

*B. Excuse for noncompliance with the policies' "notice of suit" provisions.* If a claimant fails to meet its burden of proof of substantial compliance with a notice provision, the claimant may still recover if it can demonstrate such noncompliance is excused. *Bruns*, 407 N.W.2d at 579. Insured offers two excuses for its failure to substantially comply with the notice provisions contained in its contracts with defendant insurers. We reject each of them in turn.

■ 1. First, Met–Coil insists that its failure to comply is excused by its reasonable belief that its insurance broker was acting as an agent for the insurers. As we have previ-

---

7. Columbia's policies' "notice of occurrence" provision, which is representative of the other insurers' policies' "notice of occurrence" provisions, provides:

Insured's Duties in the Event of Occurrence, Claim or Suit

(a) In the event of an occurrence, written notice containing particulars sufficient to identify

the insured and also reasonably obtainable information with respect to the time, place and circumstances thereof, and the names and addresses of the injured and of available witnesses, shall be given by or for the insured to the [insurer] or any of its authorized agents as soon as practicable after the occurrence is known by [a corporate officer].

ously described, the status of Met–Coil's insurance broker is irrelevant to Met–Coil's compliance with the "notice of suit" provisions in the policies. Likewise, insured's belief regarding the status of its insurance broker is not sufficient to excuse its failure to comply with the "notice of suit" provisions contained in the policies. Regardless of insured's belief in its insurance broker's relationship with defendant insurers, the "notice of suit" provisions did not allow the insured to deliver suit papers to an authorized agent; they required the insured to forward the CTI suit papers directly to the insurance companies. As we have repeatedly stated, this Met–Coil did not do.

2. Second, Met–Coil contends that its failure to comply with the notice provisions is excused by its belief that patent claims were not covered by general liability policies such as those it had with defendant insurers.

■ We have recognized that an insured's mistaken belief or lack of knowledge regarding coverage may be a justifiable excuse for noncompliance with an insurance policy's notice provision. *See Henschel,* 178 N.W.2d at 416 (citing common excuses such as belief that the "accident or injury was not covered by the policy"). *See generally,* C.T. Drechsler, Annotation, *Liability Insurance: Clause with Respect to Notice of Accident or Claim, etc., or with Respect to Forwarding Suit Papers,* 18 A.L.R.2d 443, § 23 (1951 & Supp.1987) (collecting several cases considering the effect of insured's belief as to policy coverage).

■ However, mistaken belief or lack of knowledge regarding coverage does not rise to the level of a legal excuse for noncompliance with the notice conditions of an insurance policy unless the claimant exercised due diligence. *See, e.g., Bruce v. United States Fidelity & Guar. Co.,* 277 F.Supp. 439, 444–45 (D.S.C.1967); *INA Ins. Co. of Ill. v. City of Chicago,* 62 Ill.App.3d 80, 82–85, 19 Ill. Dec. 519, 521–23, 379 N.E.2d 34, 36–38 (1978). In order to satisfy this due diligence requirement, the claimant must not have been negligent and must have at least made a reasonable effort to discover the existence of coverage. *Bruce,* 277 F.Supp. at 444–45;

*INA Ins. Co.,* 62 Ill.App.3d at 82–85, 19 Ill.Dec. at 521–23, 379 N.E.2d at 36–38.

■ Met–Coil's efforts to determine whether it could assert claims arising from the CTI litigation and judgment under any of its insurance policies were minimal. Met–Coil did nothing to inquire of the insurance companies themselves as to whether coverage existed for not only the patent infringement claims, which claims Met–Coil contends it mistakenly believed were not covered, but also for the other business tort claims asserted against it. Met–Coil did not even seek the advice of its insurance broker, whom Met–Coil allegedly believed an agent of the insurers, about coverage for its CTI claims until November 1990, four years after the initial CTI suit was filed against it.

Up to that time, Met–Coil simply relied upon an opinion given by its insurance broker in 1984 that general liability policies did not cover patent infringement claims asserted against Met–Coil in an unrelated lawsuit. We agree with the district court that "[t]he notion that [p]laintiff's agent *may* have misinformed its client that there was insurance coverage is not an 'excuse' which could make the [d]efendants liable for coverage." *See International Harvester Co. v. Continental Cas. Co.,* 33 Ill.App.2d 467, 472–73, 179 N.E.2d 833, 835 (1962) (considering the sophisticated nature of the insured and the resources available to it in rejecting insured's lack of knowledge excuse and affirming grant of summary judgment to defendant insurer).

We also conclude that Met–Coil did not make a reasonable effort to determine the existence of coverage, as the only evidence in the record of such an effort is its request to its insurance broker, several years after the first suit was filed against it, to determine coverage. Accordingly, Met–Coil's excuse that it did not believe that its insurance policies covered patent infringement claims is inadequate as a matter of law. *See Bruce,* 277 F.Supp. at 444–45 (insured's only inquiring to his insurance agents rather than his attorney regarding coverage until almost two years after suit had been filed against him amounted to lack of due diligence as a matter of law); *INA Ins. Co.,* 62 Ill.App.3d at 81–85, 19 Ill.Dec. at 81–84, 379 N.E.2d at 35–38

(insured's failing to inquire into existence of coverage until four months after suit had been commenced against it constituted lack of due diligence as a matter of law).

■ C. *Waiver of notice requirements.* Even if a claimant fails to supply a justifiable excuse for its failure to substantially comply with a policy notice provision, a claimant may still have coverage and recover if it can demonstrate that the insurer has waived the notice requirement. *Bruns,* 407 N.W.2d at 579. Met–Coil contends that defendant insurers have waived the notice conditions in their policies because such provisions are ambiguous. Specifically, Met–Coil argues that the notice conditions are ambiguous because of their language allowing notice to be given to the "insurance companies or their authorized agents." We agree with the district court that insured's waiver argument has no merit as a matter of law.

■ Like Met–Coil's previous argument that it complied with the notice provisions because it gave notice to its insurance broker, the insured's waiver argument is directed at the insurance policies' "notice of occurrence" provisions rather than the insurance policies' "notice of suit" provisions. As we have described, the "notice of occurrence" provisions of most of defendant insurers' policies allowed insured to give notice of an occurrence to either the company or its authorized agent,[8] but the "notice of suit" provisions only allowed insured to give notice of a suit directly to the insurers.

No ambiguity exists in these "notice of suit" provisions' language which states that suit papers shall be forwarded immediately "to the company." *See North Star Mut. Ins. Co. v. Holty,* 402 N.W.2d 452, 454 (Iowa 1987) (stating that a term in an insurance contract is not ambiguous unless the language is fairly susceptible to two interpretations). Clearly the only interpretation is that the insured must promptly send suit papers to the insurance company in order to comply with the provision.·

■ D. *Rebuttable presumption of prejudice to defendant insurers.* An insured's substantial breach of a condition precedent which is not excused or waived must be presumed prejudicial to the insurer. *American Guar.,* 467 N.W.2d at 228; *Western Mut. Ins. Co. v. Baldwin,* 258 Iowa 460, 472, 137 N.W.2d 918, 925 (1965). In order to rebut this presumption, the insured must show lack of prejudice by satisfactory evidence. *Western Mut.,* 258 Iowa at 472, 137 N.W.2d at 925. We conclude that Met–Coil has failed to meet this burden as a matter of law.

■ Insured has not presented any evidence to rebut the evidence of substantial prejudice to insurers in this case. The evidence of prejudice includes:

—Entry of a verdict, resulting in a judgment in excess of $18 million, against Met–Coil before all but one of defendant insurers were notified of the CTI suits.

—Insured's concession at oral argument that it settled this judgment in 1992 at approximately the same time as bringing the present action against defendant insurers.

—Insured's expenditure of over $4 million in attorney fees and expenses to defend itself in the consolidated CTI suit, which Met–Coil now seeks from defendant insurers.

—Insurers had no opportunity to participate in, control, or monitor the CTI litigation; or to protect themselves or the insured in the federal court from the acts of Met–Coil's trial counsel whose conduct was a substantial factor in the court's doubling of the· award for patent infringement from $7,438,-700 to $14,877,400 and imposing attorney fees against Met–Coil. *See, e.g., Reeves v. State Farm Fire & Cas. Co.,* 539 So.2d 252, 255–56 (Ala.1989) (holding over five year delay in giving notice unreasonable as a matter of law and stating purpose of suit papers delivery requirement "is to afford the insurer an opportunity to control [the] litigation").

—Insurers had no input in trial counsel's decision not to request that the jury determine the parties' equitable share of damages and, thereby, lost an opportunity to have the

---

8. In fact, insured's waiver argument does not even apply to Home's policy's "notice of occurrence" requirement or one of Hartford's primary policies' "notice of occurrence" requirements because neither of them allowed even notice of an occurrence to be given to an authorized agent.

verdict reduced. *Cf. Elevating Boats, Inc. v. Gulf Coast Marine, Inc.*, 766 F.2d 195, 199–200 (5th Cir.1985) (holding insurance company prejudiced in part by insured's failure to make a third-party demand).

—Insurers had no opportunity to assess potential liability and damages and, thereby, take any action, including settlement negotiations, to limit the substantial liability and exposure for which Met–Coil now seeks indemnification. *See, e.g., Elevating Boats,* 766 F.2d at 199 (holding insurance company prejudiced in part because it was "precluded from discussing ... the prospect of a settlement"); *Fireman's Fund Ins. Co. v. Valley Manufactured Products Co.,* 765 F.Supp. 1121, 1127–28 (D.Mass.1991), *aff'd,* 960 F.2d 143 (1st Cir.1992) (holding thirteen-year delay in giving notice prejudicial as a matter of law and stating that late notification prevents insurer from "tak[ing] action to limit damages, risks, and exposure for which the insured may claim indemnity").

—Insurers had no opportunity to make a timely and adequate investigation of the claim prior to trial. *See, e.g., Bruns,* 407 N.W.2d at 580 (concluding that denial of basic opportunity to investigate prejudiced insurance company).

Confronted by this evidence supporting the presumption of substantial prejudice to defendant insurers, the most insured has done to rebut it is to offer an affidavit of a Met–Coil officer which stated that insured retained qualified and experienced counsel to defend the CTI litigation. Such a conclusory statement is insufficient for insured to meet its burden of overcoming the presumption of prejudice and to prevent summary judgment here. *See* Iowa R.Civ.P. 237(e); *Byker v. Rice,* 360 N.W.2d 572, 574 (Iowa App.1984) (relying solely upon legal conclusions to show there is a genuine issue of material fact is not sufficient to resist summary judgment).

Accordingly, we agree with the district court's conclusion that plaintiff Met–Coil failed to meet its burden to rebut the presumption of prejudice to defendant insurers. Although we agree with plaintiff that ordinarily prejudice as a matter of law is a difficult burden to meet, *see Bluffs Dev. Co. v. Board of Adjustment,* 499 N.W.2d 12, 14 (Iowa 1993) (requiring showing that the evidence "is so strong that reasonable minds could reach but one conclusion" to meet burden of proving prejudice as a matter of law), we do not have to go so far as to hold that defendant insurers were prejudiced as a matter of law. We need only conclude, and do conclude, that insured failed to show lack of prejudice as a matter of law. *See Western Mut.,* 258 Iowa at 472, 137 N.W.2d at 925. Thus, the presumption of prejudice to the insurers has not been overcome and prevails.

IV. *Conclusion.* We conclude the district court correctly sustained the motions for summary judgment of defendant insurers.

**AFFIRMED.**