FIREMAN'S FUND INSURANCE
COMPANY, Appellee,

v.

ACC CHEMICAL COMPANY, Getty
Chemical Company, and Chemplex
Co., Appellants,

Insurance Company of North America,
Continental Insurance Company, Employers Liability Assurance Corporation,
Ltd., and First State Insurance Company, Appellees,

Evanston Insurance Company, Royal Indemnity Company, and United States
Fire Insurance Company, Defendants.

EMPLOYERS LIABILITY ASSURANCE
CORPORATION, LTD., Appellee,

v.

The CITY OF CLINTON,
Iowa, Appellant.

ACC CHEMICAL COMPANY, Getty
Chemical Company, and the City
of Clinton, Iowa, Appellants,

v.

FIREMAN'S FUND INSURANCE COMPANY, First State Insurance Company,
Continental Insurance Company, American Insurance Company, and Insurance
Company of North America, Appellees,

Royal Indemnity Company, United States
Fire Insurance Company, Employers Liability Assurance Corporation, Ltd., Columbia Casualty Company, Stonewall
Insurance Company, Evanston Insurance Company, and Shand, Morahan &
Company, Inc., Appellees.

No. 93–1596.

Supreme Court of Iowa.

July 19, 1995.

Rehearing Denied Sept. 15, 1995.

John C. Hendricks and David J. Meloy of Stanley, Lande & Hunter, Davenport, and Daniel H. Williams III and John L. Osborne of Williams & Zevnik, P.C., New York City, for appellants.

Thomas B. Read of Crawford, Sullivan, Read, Roemerman & Brady, Cedar Rapids, and Gary D. Centola, Alan C. Eagle, Ginamarie T. Alvino, and Anne M. Murray of Rivkin, Radler & Kremer, Uniondale, NY, for appellees Fireman's Fund Ins. Co. and American Ins. Co.

Robert M. Jilek of Simmons, Perrine, Albright & Ellwood, Cedar Rapids, and Paul R. Koepff, Rosemary B. Boller, Thomas J. Di Resta, and Scott A. Schroeder of O'Melveny & Myers, New York City, for appellee Ins. Co. of North America.

Ralph D. Sauer of Betty, Neuman & McMahon, Davenport, and Lawrence E. Carr, Jr., William J. Carter, and Ann T. Dorsett of Carr, Goodson & Lee, P.C., Washington, DC, for appellee Continental Ins. Co.

Robert V.P. Waterman, Jr., Thomas D. Waterman, and John D. Telleen of Lane & Waterman, Davenport, for appellee Employers' Liability Assur. Corp., Ltd.

Lawrence P. McLellan, Barbara A. Hering, and Karl T. Olson of Bradshaw, Fowler, Proctor & Fairgrave, P.C., Des Moines, and Louis G. Adolfsen, Stephen C. Cunningham, and Martin A. Gromulat of Siff Rosen, P.C., New York City, for appellee First State Ins.

Glenn Goodwin of Finley, Alt, Smith, Scharnberg, May & Craig, P.C., Des Moines, and Edward Zampino, Victor C. Harwood III, and Peter E. Mueller of Harwood Lloyd, Hackensack, NJ, for amicus curiae Aetna Cas. and Sur. Co.

Kathleen L. Nutt of Herrick, Langdon & Langdon, Des Moines, and Thomas W. Brunner, Richard M. Gordin, and Dennis A. Tosh of Wiley, Rein & Fielding, Washington, DC, for amicus curiae Ins. Environmental Litigation Ass'n.

LARSON, Justice.

The insured parties under comprehensive general liability insurance policies have appealed from a judgment against their insurance carriers, asserting that the damages awarded to them were inadequate. The insurance carriers cross-appealed the court's refusal to grant judgments for them as a matter of law. We reverse on the cross-appeals and remand for entry of judgment for the insurers.

This case involves insurance coverage for pollution cleanup costs and the cost of defense in connection with pollution caused by a manufacturing company called Chemplex. Chemplex manufactured polyethylene products in a plant situated on 230 acres of land leased from the City of Clinton. In the process of manufacturing these products,

Chemplex dumped toxic liquid waste into leaching pits at a seven-acre landfill area at a rate of 7500 to 30,000 gallons per day. Hazardous chemical waste entered into the groundwater and soil at the site and the area surrounding it. The fact of contamination is not disputed. The insureds (Chemplex and the City of Clinton—referred to collectively as Chemplex) had spent several million dollars to correct the problems at the site as of the time of the trial, and it was estimated that the total cleanup would cost in excess of $40 million.

## I. *The Background.*

Following an investigation by the Environmental Protection Agency (EPA), Chemplex in 1984 negotiated a consent decree concerning the plant operations and its plans for remediation. Under the consent decree, Chemplex agreed to clean up the site, and the city agreed to place certain restrictive covenants on the land and to allow access to contractors doing the cleanup.

During the time this pollution was occurring Chemplex was insured under comprehensive general liability (CGL) insurance policies, both primary and excess. Chemplex claims that these policies obligated its insurers to defend against any claims arising out of the pollution and to reimburse Chemplex for its cleanup costs.

Typical policies provided that the insurer would pay to the insured all amounts that the insured would become legally obligated to pay because of property damage "to which this insurance applies, caused by an *occurrence,* and the Company shall have the right and duty to defend any suit against the insured seeking damages on account of ... property damage, even if any of the allegations of the suit are groundless, false or fraudulent...." (Emphasis added.)

An "occurrence" was typically defined as an accident or event, or continuous or repeated exposure to conditions resulting in property damage "neither expected nor intended from the standpoint of the insured."

Most of the policies also included a "pollution exclusion" clause. One typical clause provided:

This insurance does not apply:

. . . .

... to bodily injury or property damage arising out of the discharge, dispersal, release or escape of smoke, vapors, soot, fumes, acids, alkalis, toxic chemicals, liquids or gasses or waste materials or other irritants, contaminants or pollutants into or upon the land, the atmosphere or any water course or body of waters; but this exclusion does not apply if such discharge, dispersal, release or escape is *sudden and accidental.*

(Emphasis added.)

At trial, the insurers moved for rulings by the court that, as a matter of law, (1) there was no "occurrence" under the policies because the pollution was both expected and intended; (2) the pollution exclusion clauses applied because the events were not "sudden and accidental"; and (3) in any event, the plaintiff's failed to give effective notice of their claim.

The court rejected these motions and submitted these and other questions to the jury. The jury was asked to determine whether an "occurrence" had been established, whether the pollution exclusion clauses were applicable, whether Chemplex's notice to its insurers was sufficient to comply with the policies, and to determine the amount of the cleanup costs and costs of defense.

The jury deliberated for approximately two weeks and found that the pollution at the Chemplex plant was in fact the result of covered "occurrences." The jury assessed the total damages at $19,264,671.93 for the cleanup and $1,484,163.47 for defense costs. It also found that there was sufficient notice given to the insurers.

After the jury's first verdict, the trial court sent it back for further deliberation. The court requested the jury to "allocate" the cleanup costs among the various insurers by applying the "pollution exclusion" clauses in the policies. The jury was asked to determine as to each insurer whether a "sudden" event had occurred, thus making the exclusion clause inapplicable. The jury found that the pollution exclusion applied and, therefore, precluded recovery, except to the extent that

some of the pollution occurred after a rupturing of a settling basin lining. According to the jury's finding, this was the only "sudden" event that could avoid the pollution exclusion.

Based on this supplemental deliberation, the jury reduced the original recovery, which had exceeded $19 million, to approximately $8.35 million. The court then reduced the total damage award further by allocating certain of the past cleanup costs according to a formula adopted by the jury. The net effect of the supplemental verdict and the court's adjustments was to reduce the judgment to $5,024,814.41. Chemplex complains with some justification that it "won the verdict but lost the judgment."

Five principal issues are raised on the appeal and cross-appeal: (1) the district court's refusal to find as a matter of law that no "occurrence" was established, (2) the court's refusal to find as a matter of law that the pollution exclusion clauses barred any recovery, (3) the court's refusal to find as a matter of law that the insured had failed to provide timely notice of any occurrences, (4) the court's requiring the jury to allocate damages based on the pollution exclusion clauses, and (5) the court's limitation of the judgment on multiyear policies to only one occurrence.

An additional issue, concerning whether the city had a justiciable claim as the owner of the property, has been raised by the insurers. We believe this issue was properly decided, and we do not discuss it in detail. Suffice it to say, as the owner of the manufacturing site, the city demonstrated that it was subject to possible claims arising out of the condition of the land, and its claim was therefore justiciable.

## II. The Notice Issue.

■ We address the notice issue first because it is dispositive of the case. The policies' requirement of timely notice constitutes a condition precedent to recovery. 8 John A. Appleman & Jean Appleman, *Insurance Law & Practice* § 4732, at 10 (1981) [hereinafter Appleman]. The insured bears the burden of proof on notice. *American Guarantee & Liab. Ins. Co. v. Chandler Mfg. Co.*, 467 N.W.2d 226, 228 (Iowa 1991); *Bruns v. Hartford Accident & Indem. Co.*, 407 N.W.2d 576, 579 (Iowa 1987); *Henschel v. Hawkeye–Sec. Ins. Co.*, 178 N.W.2d 409, 419 (Iowa 1970); *Henderson v. Hawkeye–Sec. Ins. Co.*, 252 Iowa 97, 106 N.W.2d 86, 91. (1960).

Chemplex claims it notified its insurance carriers of the occurrence by notifying an "R.B. Jones" in 1984 that the EPA action had resulted in liability on the part of Chemplex to clean up the site. The insurers dispute the sufficiency of this notice and contend that the earliest direct notice they received of any occurrence was in December 1989, five years after the EPA consent decree. At least one insurer claims that it did not receive direct notice until February 1990.

■ Ordinarily, the question of whether a notice has been reasonably given is one of fact for the jury. *Hoekstra v. Farm Bureau Mut Ins. Co.*, 382 N.W.2d 100, 109 (Iowa 1986); *Henschel*, 178 N.W.2d at 416; Appleman § 4734, at 44–45.

However, the insurers contend that, as a matter of law, Chemplex failed to give adequate notice of an occurrence. We review the district court's ruling on this issue to determine whether the evidence, taken in the light most favorable to Chemplex and taking every legitimate inference that might be fairly or reasonably deduced therefrom, showed that the insurers were entitled to a directed verdict at the close of all of the evidence. *Tomka v. Hoechst Celanese Corp.*, 528 N.W.2d 103, 106 (Iowa 1995); *Lala v. Peoples Bank & Trust Co.*, 420 N.W.2d 804, 806 (Iowa 1988).

Chemplex acknowledges that it did not directly notify the insurers for five years, but it argues that it effectively notified them in 1984 by sending to "R.B. Jones" a carbon copy of a letter notifying a pollution insurer (not involved in this case) of the possibility of a claim. Chemplex claims that R.B. Jones was acting as the agent for the insurance companies. It also argues that the insurers had "constructive" notice of the pollution because of the insurers' yearly inspections of the site.

The insurers counter that R.B. Jones was not shown to be an agent for purposes of receiving notice and further that the five-year delay in giving direct notice to them prejudiced them as a matter of law. The insurers also contend that any intervening "constructive" notice to the insurers was insufficient.

■ A. *Constructive notice.* Chemplex contends that sufficient evidence was presented at trial to establish that the insurers had constructive notice of an occurrence under this policy because of the periodic insurance inspections of the site. We reject that argument. We believe no reasonable fact finder could conclude that any of the activities observed during the periodic inspections (which were not even conducted by all of the insurers) would lead the companies to believe that there had been an "occurrence" under the policies.

The inspections might well have revealed that there was pollution occurring on the site, but this could not rise to the level of notice that the EPA had in fact conducted an extensive investigation and certainly not that Chemplex had committed itself to a consent decree with the EPA to incur millions of dollars in remediation costs. We believe that the constructive notice argument must fail as a matter of law. *See American Casualty Co. v. FDIC,* 944 F.2d 455, 460 (8th Cir.1993) (notice must be specific and in writing); *Hasbrouck v. St. Paul Fire & Marine Ins. Co.,* 511 N.W.2d 364, 369–70 (Iowa 1993) (constructive notice to insurer insufficient; policy "contemplates that the insured will report to the insurer any claims allegedly covered by the policy").

B. *The written notice to R.B. Jones.* Herein lies the key to this case. All of the policies required written notice of an occurrence. For example, Continental's provision was illustrative. It stated:

In the event of an OCCURRENCE, written notice containing particulars sufficient to identify the insured and also reasonably obtainable information with respect to the time, place and circumstance thereof, and the names and addresses of the injured and of available witnesses, shall be given by or for the insured to the company or any of its authorized agents as soon as practicable.

Employers' notice requirement provided:

Notice of occurrence. When an occurrence takes place which, in the opinion of the Insured, involves or may involve liability on the part of the company, prompt written notice shall be given by or on behalf of the Insured to the company or any of its authorized representatives. Such notice shall contain particulars sufficient to identify the insured and also reasonably obtainable information respecting the time, place and circumstances of the occurrence. Failure to so notify the company of any occurrence which at the time of its happening did not appear to involve this policy but which, at a later date, would appear to give rise to a claim hereunder shall not prejudice such claim provided such notice is then given.

A typical Fireman's Fund policy stated:

Notice of occurrence. The Insured shall immediately advise the Company of any occurrence or disaster which will probably result in liability under this policy. The Company shall not, however, be called upon to assume charge of the settlement or defense of any claims made, or suits brought, or proceedings instituted against the Insured, but shall have the right and opportunity to be associated with the Insured in the defense and trial of any such claims, suits or proceedings relative to any occurrence which, in the opinion of the Company may create liability on the part of the Company under the terms of the policy. If the Company avails itself of such right and opportunity, the Insured and the Company shall cooperate in all respects so as to effect a final determination of the claim or claims.

The remaining policies all stated the duty to notify in similar language.

The sufficiency of Chemplex's written notice turns on the effects of a letter from Chemplex to Evanston Insurance Company on October 18, 1984. This letter included a "cc" notation at the bottom that a copy was being sent to an "R.B. Jones." Evanston Insurance Company was an environmental

liability carrier, and it is not involved in this case. The letter, written on Chemplex letterhead, stated:

October 18, 1984

Certified Mail

Evanston Insurance Company

c/o Shand, Morahan & Company, Inc.

One American Plaza

Evanston, IL 60201

Re: Environmental Impairment Liability Insurance Policy No. IE100194

Gentlemen:

The purpose of this letter is to advise you of a prospective third-party claim for environmental liability and clean-up *under the subject policy*. It has come to our knowledge that there is a contamination of groundwater on the insured premises that is likely contaminating groundwater outside of the premises. Chemplex Company is taking steps and acting in a manner to avert further contamination and losses. As additional information becomes available concerning this matter, we will keep you advised.

In order to fully determine any damage to surrounding third-party property, it may be necessary for Chemplex Company to lease portions of that property in order to drill test wells to monitor the groundwater or to clean up any potential damage. We would consider the cost of such a lease as part of the cost of any potential clean-up, and will look for the consent of the insurer to enter into such a lease at such time as it is negotiated.

Very truly yours,

/s/

William L. Reeve

Following the text of the letter, the following key language appears:

LR:lh

cc: R.M. Insefra, American Can Company
    G.A. Hallinan, *R.B. Jones Corp.*

(Emphasis added.)

It is immediately apparent that this letter was not addressed to any of the insurers in this case. It merely shows that a copy of the letter was sent to an "R.B. Jones."

Despite the key role played by R.B. Jones in this case, its true identity and relationship to these insurers remains largely a mystery. It is clear that there are at least two R.B. Jones: R.B. Jones of Illinois and R.B. Jones of Kansas City. There was some evidence that R.B. Jones was an insurance broker who had provided insurance for Chemplex, but ordinarily a broker is deemed to be an agent of the insured, not the insurance company. Appleman § 4736, at 83–84. There was even some evidence that R.B. Jones was an in-house insurance department with Chemplex itself.

Despite considerable doubts about the identity and authority of R.B. Jones, we will assume that the R.B. Jones to whom a copy of the Evanston Insurance Company letter was sent was in fact an agent of the insurers for notice purposes. The issue is whether, as a matter of law, the mailing of a copy of the Evanston letter under these circumstances was not substantial compliance. We believe it was not.

Because the notice requirement is a condition precedent, Chemplex must establish at least one of the following: (1) that it had substantially complied with the notice requirements; (2) that, if it had not complied with the specific requirements, its failure to comply with the provision was excused or waived; or (3) that the failure to comply with the notice requirement was not prejudicial to the insurers. *American Guarantee & Liab. Ins. Co.*, 467 N.W.2d at 228; *Henderson*, 252 Iowa at 106, 106 N.W.2d at 92.

We address the substantial compliance question first. In *Bruns*, 407 N.W.2d at 579–80, a twenty-eight-month delay between the accident and the notice to the insurer was held as a matter of law not to be substantial compliance, and in *Henderson*, 252 Iowa at 107, 106 N.W.2d at 91–92, a thirteen-month delay was held not to be substantial compliance.

Environmental cases have held that delays of substantially less than five years preclude coverage as a matter of law. *See, e.g., State of New York v. Blank*, 27 F.3d 783 (2d Cir. 1994) (summary judgment granted; notice ten months late after event); *American*

*Ins. Co. v. Fairchild Indus., Inc.,* 852 F.Supp. 1173, 1177–79 (E.D.N.Y.1994) (four-year delay in notice); *Wehner v. Foster,* 331 Mich. 113, 121, 49 N.W.2d 87, 91 (1951) (seven-month delay; insurer deprived of adequate opportunity to investigate).

■■■ We conclude as a matter of law that the five-year delay in serving direct notice in this case was not substantial compliance with the notice requirements of the policies. The copy of the Evanston Insurance Company letter, which had been sent to R.B. Jones, did not mention these CGL insurers by name. The letter was directed to a pollution liability company, not a CGL carrier, and the notion of collecting against any CGL carrier is not even suggested. In addition, the Evanston letter stated: "[T]he purpose of this letter is to advise you of a prospective third-party claim for environmental liability and clean up under the *subject policy*" (the pollution policy expressly identified in the letter). The reference in the letter to Evanston to a specific policy written by Evanston clearly implied that no other insurance company or policy was implicated. It is unreasonable to assume that any agent receiving a copy of this letter would conclude that it might also apply to other policies written by other companies.

The issues remain (1) whether substantial compliance was excused (Chemplex does not attempt to show that the insurers have *waived* compliance), and (2) whether the insurance companies were prejudiced. *See American Guarantee & Liab. Ins. Co.,* 467 N.W.2d at 228.

■■■ C. *The excuse issue.* Chemplex attempts to establish an excuse for its failure to provide earlier notice, claiming that the Chemplex business was in the process of being sold during the EPA investigation, and the location of its insurance policies was uncertain. We summarily reject this argument. We agree with the rationale of *Olin Corp. v. Insurance Co. of North America,* 966 F.2d 718, 724–25 (2d Cir.1992), in which the court discussed a similar claim:

Even assuming that [the insured] did not locate the Hanover policies until November 1981, a lack of knowledge of an insurance policy does not excuse a delay in notification of an occurrence. It is true that "delay … may be excused if there was a justifiable lack of knowledge of coverage." A justifiable lack of knowledge of coverage, however, is to be distinguished from a lack of knowledge of the existence of a policy. Notice of the content of coverage is within the control of an insurer, and it will thus generally bear some of the responsibility for an insured's lack of knowledge of coverage. An insurer has no power over an insured's retention of a policy, however, and bears none of the responsibility for an insured's loss of a policy. That being the case, we believe that it is the responsibility of the insured, not the insurance company, to keep track of which carriers have provided him with liability insurance. Although toxic torts may expose insurers to liability founded on acts that occurred decades before and caused their loss reserves to be inadequate, we see no reason to increase that burden by allowing the insureds to get late notice because they lost valid policies.

D. *The prejudice issue.* Chemplex contends that the insurers have failed to show prejudice, and the jury made such a finding. The question of prejudice is usually for the jury, but if the facts are undisputed and the only question concerns the breach of the policy, it may become a question of law for the court. Appleman § 4746, at 196–99. We conclude that this is such a case.

■■■ The burden of proof to show a lack of prejudice is on the insured. *Bruns,* 407 N.W.2d at 579; *Henderson,* 252 Iowa at 103–07, 106 N.W.2d at 90–92.

One authority has observed that,
[s]ince it is often impossible for the insurer to know what witnesses it would have found or what facts it could have ascertained had immediate notice been given and a prompt investigation made, it is submitted that [placing the burden on the insurer] is unworkable. The burden should be placed upon the one seeking to recover. However, if this burden is discharged, an insurer will not be relieved of its liability merely by showing that notice of an accident was not given as soon as

practicable after its occurrence where the insured can demonstrate that the insurer has not been prejudiced thereby. Thus, mere speculation that prejudice to an insurer may exist as a result of its insured's failure to give notice of an accident as soon as practicable after its occurrence will not suffice to relieve the insurer of its liability wherein the lack of prejudice is clearly demonstrated.

Appleman § 4732, at 26–30.

Several federal cases have found prejudice as a matter of law in cases involving insurance claims for pollution. *See, e.g., In re Tex. E. Transmission Ins. Coverage Litigation,* 15 F.3d 1249, 1254–56 (3d Cir.) (inability to investigate toxic cleanup site, among other reasons, prejudiced the insurance company, which received notice eight months after the occurrence), *cert. denied,* —— U.S. ——, 115 S.Ct. 291, 130 L.Ed.2d 206 (1994); *West Bay Exploration Co. v. AIG Specialty Agencies,* 915 F.2d 1030, 1037 (6th Cir.1990) (found prejudice in insured's destruction, prior to notice, of barrels during remediation process); *Port Servs. Co. v. General Ins. Co.,* 838 F.Supp. 1402, 1404 (D.Or.1993) (removal of underground storage tanks held to be prejudicial as a matter of law); *Hoppy's Oil Serv., Inc. v. Insurance Co. of N.A.,* 783 F.Supp. 1505, 1509–11 (D.Mass.1992) (insurer prejudiced as a matter of law when underground storage tank site was remediated before insurer could conduct its own tests, although others had conducted tests before the remediation); *Olin Corp. v. Insurance Co. of N.A.,* 771 F.Supp. 76, 79 (S.D.N.Y.1991), *aff'd,* 972 F.2d 1328 (2d Cir.1992) (found prejudice as a matter of law by insured's expenditure of over $2 million in remediation costs, entry into a consent decree obligating it to spend millions of dollars more and in changing physical appearance prior to giving notice); *Fireman's Fund Ins. Co. v. Valley Manufactured Prods. Co.,* 765 F.Supp. 1121, 1129 (D.Mass.1991), *aff'd,* 960 F.2d 143 (1st Cir.1992) (insurer prejudiced when underground storage tank was removed prior to notice).

It is stated that

[t]he purpose of a policy provision requiring the insured to give the company prompt notice of an accident or a claim is to give the insurer an opportunity to make a timely and adequate investigation of all the circumstances. An adequate investigation often cannot be made where notice is long delayed, because of the possible removal or lapse of memory on the part of witnesses, the loss of opportunity for examination of the physical surroundings and making photographs thereof for use at the trial, and the possible operation of fraud, collusion, or cupidity. Such a requirement [for timely notice] tends to protect the insurer against fraudulent claims, and also against invalid claims made in good faith. And further, if the insurer is thus given the opportunity for a timely investigation, reasonable compromises and settlements may be made, thereby avoiding prolonged and unnecessary litigation.

Appleman § 4731, at 2–5 (citations omitted).

■ In this case, five years had passed since the occurrence. The appearance of the site had been changed. At least one key witness had died, many had left, and many relevant documents had been destroyed. The witnesses who were available could not reasonably be expected to fully recall the events of five years earlier. These insurers were deprived of any opportunity to negotiate with the EPA or provide any input, except their money, on the consent decree. Chemplex had already spent millions on remediation and had obligated itself to spend millions more before it notified these insurers that they were expected to pay these expenses.

We conclude under all the circumstances that, even viewing the evidence in the light most favorable to the plaintiff, these insurers were prejudiced by the late notice.

We reverse the judgments of the district court on the cross-appeals and remand for entry of a judgment in favor of the insurance companies.

Because of this disposition of the case, we do not address any of the remaining issues, including those raised on Chemplex's appeal

in which it urges that it should have obtained a larger verdict.

**REVERSED AND REMANDED.**

NEUMAN and TERNUS, JJ., take no part.