**IN THE COURT OF APPEALS OF IOWA**

No. 3-1181 / 13-0952
Filed April 30, 2014

**B & F JACOBSON LUMBER &
HARDWARE, L.L.P.,**
    Plaintiff-Appellant,

**vs.**

**ACUITY, a Mutual Insurance
Company,**
    Defendant-Appellee.
_____

        Appeal from the Iowa District Court for Monona County, Jeffrey L.

Poulson, Judge.

        An insured appeals the district court's grant of summary judgment to the

insurer. **AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.**

        Travis J. Burk and Shannon M. Henson of the Hope Law Firm, West Des

Moines, for appellant.

        Stephen J. Powell and Dustin T. Zeschke of Swisher & Cohrt, P.L.C.,

Waterloo, for appellee.

        Heard by Danilson, C.J., and Vaitheswaran and Mullins, JJ.

**MULLINS, J.**

B & F Jacobson Lumber & Hardware, L.L.P. (B & F Jacobson) appeals the district court's grant of summary judgment in favor of Acuity Insurance. B & F Jacobson asserts there is a question of fact as to whether it complied with the conditions precedent in the insurance policy, and if not, there is a question as to whether Acuity was prejudiced by its failure to comply with the conditions precedent. B & F Jacobson also asserts Acuity had no objectively reasonable basis to deny its claim for additional insurance proceeds and the court should not have dismissed its punitive damages claim. For the reasons stated below, we affirm denial of summary judgment on the issue of accord and satisfaction, we reverse the grant of summary judgment on the issues of compliance with the notice provision and whether Acuity was prejudiced, we reverse the grant of summary judgment on the bad faith claim, and we remand this case for further proceedings.

## I. BACKGROUND FACTS AND PROCEEDINGS.

B & F Jacobson's buildings were damaged in April 2011 after a tornado tore through the town of Mapleton. Approximately three days after the tornado, Acuity sent an adjuster, Brad Werger, to meet with Bruce Jacobson, B & F Jacobson's owner, to assess the damage. After reviewing the damage, Werger prepared a proof of loss and an estimate to repair the damage. Werger claimed he discussed the estimate and proof of loss with Jacobson and adjusted his figures according to their discussion. Jacobson endorsed the proof of loss, and

Werger issued Jacobson a check for the damage. On the check it stated "Settlement in Full-ACV." Jacobson cashed the check.

However, at some point after the check was cashed, Jacobson's brother informed him of additional damage to the buildings, specifically the roof on two buildings and a displaced wall on one building. Jacobson claimed it took several months to clean up the property because he and his employees were busy with helping other residents in the town rebuild, and the property had sustained much more damage than was reflected in the estimate and proof of loss prepared by Werger.

Jacobson hired an independent adjuster, James Pierce, in August 2011 to represent his interests. In February 2012, Pierce had a conversation with Werger during which he mentioned B & F Jacobson had hired him as its public adjuster. When Pierce did not hear back from Werger, Pierce followed up with an email in August 2012, which sought a copy of the documents Jacobson signed. Werger replied by email that the policyholders signed a release so he would not be opening up the claim and that he was on vacation at the time but would send the release to Pierce when he got back. Based on this information, Pierce believed Acuity would not be willing to consider a claim for additional damage and advised Jacobson to seek legal representation.

B & F Jacobson filed suit against Acuity in August 2012, asserting claims for breach of contract, unjust enrichment, reasonable expectations, and bad faith and seeking punitive damages. Acuity, in its answer, asserted affirmative defenses of accord and satisfaction and failure to comply with contractual

obligations, along with asserting the punitive damage claim was barred as the claim was fairly debatable.

Acuity filed a motion for summary judgment in January 2013, asserting it was entitled to summary judgment on all of B & F Jacobson's claims because of accord and satisfaction and because B & F Jacobson failed to comply with conditions precedent before filing suit. B & F Jacobson resisted the motion, and the district court granted Acuity's motion in May 2013 after an unreported hearing.

The district court concluded there was a question of fact with regard to the affirmative defense of accord and satisfaction, precluding summary judgment on this ground. However, the court found no question of fact regarding B & F Jacobson's failure to satisfy the conditions precedent under the insurance policy prior to filing suit. The court found the ten-month delay in B & F Jacobson's notification to Acuity of the additional damage claim was, as a matter of law, a failure to substantially comply with the terms of the policy. The court concluded as a matter of law that the condition precedent was not excused by any conduct of Acuity, and B & F Jacobson failed to rebut the presumption of prejudice to Acuity. The court also rejected B & F Jacobson's bad faith claim, along with its claim for punitive damages, by finding as a matter of law Acuity had a reasonable basis to deny the claim and the facts did not support the assertion that Acuity's failure to reinvestigate resulted in the loss of its reasonable basis.

B & F Jacobson appeals the district court's grant of summary judgment to Acuity.

## II. SCOPE AND STANDARD OF REVIEW.

Our review of the district court's ruling on a motion for summary judgment is for correction of errors at law. *Otterberg v. Farm Bureau Mut. Ins. Co.*, 696 N.W.2d 24, 27 (Iowa 2005). The district court should grant summary judgment if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Iowa R. Civ. P. 1.981(3). We view the record in the light most favorable to the nonmoving party and permit all reasonable inferences that can be drawn from the record. *McCormick v. Nikkel & Assocs., Inc.*, 819 N.W.2d 368, 371 (Iowa 2012).

## III. CONDITION PRECEDENT.

The insurance policy at issue in this case contained the following conditions that had to be completed in the event of loss or damage to covered property:

> (2) Give us prompt notice of the loss or damage. Include a description of the property involved.
> (3) As soon as possible, give use a description of how, when and where the loss or damage occurred.
> . . . .
> (5) At our request, give us complete inventories of the damaged and undamaged property. Include quantities, costs, values and amount of loss claimed.
> . . . .
> (7) Send us a signed, sworn proof of loss containing the information we request to investigate the claim. You must do this within 60 days after our request. We will supply you with the necessary forms.
> (8) Cooperate with us in the investigation or settlement of the claim.

6

If the terms were not satisfied, the policy provided that no legal action could be brought against Acuity. Acuity asserts B & F Jacobson failed to comply with the condition precedent by failing to give notice of its claim for additional damages as a result of the tornado and should be precluded from maintaining this action.

"When a notice provision is written as a condition precedent to policy coverage, substantial compliance with such a condition must be shown by the insured." *Interstate Power Co. v. Ins. Co. of N. Am.*, 603 N.W.2d 751, 756 (Iowa 1999). "Ordinarily, the question of whether a notice has been reasonably given is one of fact for the jury." *Fireman's Fund Ins. Co. v. ACC Chem. Co.*, 538 N.W.2d 259, 262 (Iowa 1995). However, where the facts are not in dispute and the inferences are certain, the question of whether timely notice was given is a question of law for the court. *Met-Coil Sys. Corp. v. Columbia Cas. Co.*, 524 N.W.2d 650, 656 (Iowa 1994) (citation omitted). If the notice provisions of the policy are ambiguous or susceptible of different interpretations, such terms are construed against the insurer. *See American Family Mut. Ins. Co. v. Corrigan*, 697 N.W.2d 108, 111 (Iowa 2005) ("Due to the adhesive nature of insurance contracts, ambiguous policy provisions are interpreted in the light most favorable to the insured.").

Here, there is no question B & F Jacobson provided Acuity with timely notice of the damage following the tornado and complied with each required condition of the policy. In fact, Acuity paid on the loss at that time. There is also no question that B & F Jacobson accepted the insurance proceeds and a minimum of ten months elapsed before it contacted any representative of Acuity

to report additional damage. The tornado occurred in April 2011. B & F Jacobson hired James Pierce to be its public adjuster in August 2011, and Pierce first had a conversation with the Acuity adjuster, Brad Werger, in February of 2012—ten months after the tornado. The extent of this first conversation is unknown, though Pierce in his affidavit asserts he informed Werger he had been hired by B & F Jacobson and he "understood" that Werger "understood" B & F Jacobson was disputing the amount of its claim. The next contact between the two adjusters did not occur until August 2012—six months after the first contact and sixteen months after the tornado—when Pierce followed up with Werger by email seeking a copy of whatever Bruce Jacobson signed.

One of the questions becomes whether the notice provisions once fully met must subsequently be satisfied again if additional damage is discovered that arose out of the same loss event which Acuity investigated and for which it paid what both parties mistakenly believed was all the loss. If under these circumstances an additional pre-lawsuit notice is required, the next question is whether a ten- or sixteen-month delay in notifying Acuity of the additional damages caused by a previously investigated loss substantially complied with the "prompt" notice requirement of the policy. The district court concluded in effect that an additional notice was required and that B & F Jacobson did not substantially comply with such requirement, citing *Dico, Inc. v. Employers Insurance of Wausau*, 581 N.W.2d 607, 614 (Iowa 1998), for the proposition that "an insured's lack of compliance with notice requirements can be determined as a matter of law when the delay is measured in terms of months and years." The

district court also noted in *Henderson v. Hawkeye-Security Insurance Co.*, 106 N.W.2d 86, 91 (Iowa 1960), a delay of thirteen months was considered to be a failure to substantially comply with the notice requirement under the policy as a matter of law.

The extent of B & F Jacobson's contact with Acuity after it discovered additional damage was the two conversations between Pierce and Werger, which indicated that B & F Jacobson was "disputing the amount of its claim." What is unclear from this record is whether the policy notice provisions apply to situations such as this where the insurer is made aware of, investigated, and paid out insurance proceeds for a loss but then the insured discovers what it thinks is additional damage related to the same loss. The summary judgment record we have on appeal does not contain the insurance policy at issue but only contains block quoted portions of the notice provisions. It is not clear whether the insured must provide the same notice to the insurer where the insurer is already aware of the loss, its cause, and has surveyed the damage.

This case varies substantially from the cases cited by the district court in support of its decision that the ten- or sixteen-month delay in providing Acuity information about the additional loss was a failure to comply with the notice provision as a matter of law. The proposition stated by the district court that an insured's lack of compliance with notice requirements can be determined as a matter of law when the delay is measured in terms of months and years comes from the supreme court's decision in *Dico, Inc.*, 581 N.W.2d at 614, which cites as support *Fireman's Fund*, 538 N.W.2d at 265. In the *Fireman's Fund* case, the

insured failed to provide notice to the insurers until five years after it entered into an EPA consent decree. 538 N.W.2d at 262. The supreme court concluded as a matter of law that the five-year delay in serving direct notice was not substantial compliance with the notice requirements of the policies at issue. *Id.* at 265.

The district court also cited *Henderson*, 106 N.W.2d at 91, and *Bruns v. Hartford Accident and Indemnity Co.*, 407 N.W.2d 576, 579–80 (Iowa 1987), to support its conclusion that the insured's ten-month delay in this case failed to substantially comply with the notice provisions. In *Bruns*, the insured did not provide any notice to the insurers of the automobile accident he had been involved in until twenty-eight months after the accident and after he had been served with a lawsuit by the injured party. 407 N.W.2d at 578. Likewise in *Henderson*, the injured party did not give the insurer any notice of the automobile accident until thirteen months after the occurrence. 106 N.W.2d at 91. In both of these cases and in *Fireman's Fund*, the insurer had no knowledge whatsoever about any loss for months or years after the loss occurred. This is simply not factually similar to the case at hand.

Acuity clearly had notice of the tornado damage loss, inspected the property, and issued a check to B & F Jacobson within days of the storm. The insurer was present at the loss site inspecting the damage and estimating the loss. There is clearly an unanswered question regarding whether the notice provision in the policy applies to situations where the insurer already knows of the claim, investigates it, and makes payment, but the insured later seeks additional money under the policy for damage it claimed was not previously

discovered; and there is clearly a factual question as to whether a ten-month delay in providing such notice—if it were required—failed to substantially comply with the notice provisions in the policy.

Assuming such notice was required and B & J Jacobson failed to substantially comply with the notice requirement, then "the insured must show that failure to comply was excused, or that the requirements of the condition were waived, or that failure to comply was not prejudicial to the insurer." *Interstate Power*, 603 N.W.2d at 757; *see also Fireman's Fund*, 538 N.W.2d at 264. B & F Jacobson does not contend on appeal that its noncompliance was excused or that Acuity waived the notice requirement; however, it does assert that there is a factual question as to whether Acuity was prejudiced by the failure to provide notice of the additional damage.

B & F Jacobson claims that after being contacted by Pierce, Acuity, through its adjuster Werger, refused to re-evaluate the claim due to the alleged policyholder release. B & F Jacobson also asserts that Acuity did in fact get a chance to inspect the damage caused by the tornado, unlike the insurers in the cases cited above. In those cases, the insurers did not get any notice of a claim at all and were unable to inspect the premises or document the loss. All of those things were done by Acuity when it initially inspected the damage and paid for damages that were observed at that time. Also, B & F Jacobson claims that repairs for the additional damage on one building were not completed until December 2012, well after the suit here was filed, and no work has been done to the other building that had a displaced wall. Thus, after notice by suit, Acuity still

had an opportunity to further evaluate all the claimed damage, and even to this day has had the opportunity to examine at least some of the remaining claimed damage. Acuity has refused to reinvestigate the claim, and B & F Jacobson claims there is no evidence that if it had notified Acuity earlier of the additional damages that it would have re-evaluated its claim. In fact, Werger made it clear in his email to Pierce in August 2012 that, based on what Acuity claimed to be a release, it would not reopen the file.

"An insured's substantial breach of a condition precedent which is not excused or waived must be presumed prejudicial to the insurer. In order to rebut this presumption, the insured must show lack of prejudice by satisfactory evidence." *Met-Coil Sys.*, 524 N.W.2d at 658 (internal citations omitted). "The question of prejudice is usually for the jury, but if the facts are undisputed and the only question concerns the breach of the policy, it may become a question of law for the court. . . . The burden of proof to show a lack of prejudice is on the insured." *Fireman's Fund*, 538 N.W.2d at 265 (internal citations omitted).

The district court concluded B & F Jacobson failed to rebut the presumption of prejudice finding some of the repair work, as well as the clean-up, had been done by the time Pierce first contacted Werger ten months after the tornado. Because the scene had changed, the district court concluded Acuity was deprived of the ability to assess the additional damage in the new claim and found as a matter of law that B & F Jacobson failed to rebut the presumption of prejudice.

Acuity had an adjuster at the scene of the loss within days of the tornado. It inspected the damage, prepared a proof of loss, and negotiated the values of the items damaged with Jacobson. This is not a situation where Acuity had no notice and no ability to inspect the damaged premises for months or years after the loss occurred. It is clear Acuity, through its adjuster, took the position that the policyholder's release and the settlement check, which contained the words "Settlement in Full-ACV," completely covered the damage caused by the tornado. B & F Jacobson refrained from completing repairs to one of its buildings until after the lawsuit had been filed. It has yet to repair the damage to another building it claims was caused by the tornado. We conclude there is a factual question regarding whether or not Acuity was prejudiced by the ten-month delay in receiving notice of the additional damage claim, assuming the fact finder determines the notice provision is applicable in this factual situation as detailed above.

We conclude the district court erred in finding as a matter of law that the notice provision in the policy was applicable to this case, that B & F Jacobson failed to substantially comply with the notice provision, and that B & F Jacobson failed to rebut the presumption of prejudice. We reverse the district court's decision on this issue and remand for a trial on the merits.

## IV. ACCORD AND SATISFACTION.

As an alternative ground to affirm the district court's summary judgment decision, Acuity asserts B & F Jacobson's contract claims are barred by accord

and satisfaction.[1]  "Accord and satisfaction is a method of discharging a claim whereby the parties agree to give and accept something in settlement of the claim and perform the agreement."  *Robinson v. Norwest Bank, Cedar Falls, N.A.*, 434 N.W.2d 128, 130 (Iowa Ct. App. 1988).

> There can be no accord and satisfaction unless the creditor, or party receiving the thing or promise offered, understands, or from the circumstances of the offer, or the acts or declarations with which it is accompanied, is bound to understand, that he takes it in full satisfaction of his claim.

*Id.*  "The question of intent is ordinarily a jury question."  *Hengesteg v. Northern Eng'g, Inc.*, 478 N.W.2d 307, 309 (Iowa 1991).  The common law elements of accord and satisfaction have been codified in Iowa Code section 554.3311(1) (2011)—"(i) that person in good faith tendered an instrument to the claimant as full satisfaction of a claim, (ii) the amount of the claim was unliquidated or subject to a bona fide dispute, and (iii) the claimant obtained payment of the instrument."

The district court found a factual issue prevented it from deciding this issue as a matter of law.  Specifically, it concluded there was a question of fact regarding whether there was a bona fide dispute and whether Acuity acted in good faith in issuing the check with "Settlement in Full-ACV" written on it.  The court noted the differing accounts of the interaction between Werger and Jacobson when the check was issued.  Werger asserted he discussed the estimate with Jacobson and agreed on a final figure, while Jacobson asserts

---

[1] While Acuity did not cross-appeal the district court's summary judgment ruling, we conclude it did not have to in order to assert this alternative ground as it was the prevailing party at the district court.  *See Duck Creek Tire Serv., Inc. v. Goodyear Corners, L.C.*, 796 N.W.2d 886, 892–93 (Iowa 2011) (finding Goodyear did not have to cross-appeal an adverse ruling from the district court in order to raise the issue on appeal as an alternative ground for relief because it was a prevailing party).

Werger came up with the estimate on his own and Jacobson only signed it. The court also noted that Acuity's intention and state of mind at the time it issued the check to B & F Jacobson must be resolved by the fact finder.

Acuity asserts on appeal that the district court erred in concluding there was a factual issue on whether there was bona fide dispute because the rule requires there to be a bona fide dispute *or* the claim must be unliquidated. Acuity claims the record is clear that the claim was unliquidated, therefore it does not matter if there was a bona fide dispute or not. Acuity asserts that insurance claims such as those caused by a tornado are ordinarily unliquidated because the amount cannot be determined by a simple mathematical equation. *See Kellogg v. Iowa State Traveling Men's Ass'n*, 29 N.W.2d 559, 569 (Iowa 1947) (stating "a claim for debt or damages is liquidated in law when the precise amount thereof is fixed or has been agreed upon" and defining an "unliquidated claim" as "one, the amount of which has not been fixed by agreement or cannot be exactly determined by the application of rules of arithmetic or of law").

In response B & F Jacobson claims that what Acuity paid in those first few days after the tornado was the amount of damage that was undisputed, which it was required to do under Iowa law. *See* Iowa Admin. Code r. 191-15.41(6) ("The insurer shall affirm or deny liability on claims within a reasonable time and shall tender payment within 30 days of affirmation of liability, if the amount of the claim is determined and not in dispute."). B & F Jacobson claims that Acuity paid only the undisputed portion of the claim when it tendered the check days after the tornado, and thus, there was no consideration for an accord and satisfaction.

With respect to the good faith issue, Acuity claims the district court failed to indicate what evidence in the record showed Acuity did not issue the settlement check in good faith. It claims speculation is not sufficient to generate a question of fact even where the state of mind or bad faith of a party is at issue. B & F Jacobson claims that Acuity's violation of Iowa Administrative Code rule 191-15.41(10) when it wrote "Settlement in Full-ACV" on the check shows its lack of good faith. This rule provides,

> No insurer shall indicate to a first-party claimant on a payment draft, check or in any accompanying letter that said payment is "final" or "a release" of any claim unless the policy limit has been paid or there has been a compromise settlement agreed to by the first-party claimant and the insurer as to coverage and amount payable under the contract.

B & F Jacobson contends that an insurer cannot violate this administrative rule on one hand and then claim to be in good faith on the other hand based on accord and satisfaction.

B & F Jacobson has established a factual question regarding the application of accord and satisfaction. As the district court found, there is a question of whether there was a bona fide dispute between the parties when the check was issued. In addition, we find there is a fact question regarding whether the amount Acuity paid to B & F Jacobson was liquidated or unliquidated. We decline Acuity's invitation to find all losses such as this always have unliquidated damages. We also agree with the district court that there is factual question regarding whether Acuity acted in good faith in putting "Settlement in Full-ACV" on the check it issued days after the tornado. The district court's decision regarding Acuity's affirmative defense of accord and satisfaction is affirmed.

## V. BAD FAITH AND PUNITIVE DAMAGES.

Next, B & F Jacobson claims the district court erred in dismissing its bad faith claim against Acuity and thereby eliminating its claim for punitive damages. It claims Acuity had no reasonable basis to deny its claim for additional damages. It also claims Acuity violated an administrative rule by placing "settlement in full" on the check when the policy limits had not been paid and no compromise settlement had been reached. *See* Iowa Admin. Code r. 191–15.41(10).[2] B & F Jacobson also asserts Acuity had no subjectively reasonable basis to deny its claim.

Our supreme court first recognized a bad faith claim against insurance carriers in *Dolan v. Aid Insurance Co.*, 431 N.W.2d 790 (Iowa 1988). In order to prove bad faith, an insured must show "the absence of a reasonable basis for denying benefits of the policy, and the [insurer's] knowledge or reckless disregard of the lack of a reasonable basis for denying the claim." *Reuter v. State Farm Mut. Auto. Ins. Co.*, 469 N.W.2d 250, 253 (Iowa 1991). The test has been described as both objective and subjective because there must be an absence of a reasonable basis for the denial—objective—and the insurer needs to know or have reason to know of the absence of a reasonable basis—

---

[2] While it acknowledges that this administrative rule, along with other rules found in the Iowa Unfair Trade Practices Act, does not create a private cause of action, B & F Jacobson assert that a violation of the act by an insurance carrier may support a claim for punitive damages under its bad faith claim. *See Terra Indust., Inc. v. Commonwealth Ins. Co.*, 990 F. Supp. 679, 688 (N.D. Iowa 1997) (finding a violation of Iowa Code section 507B.4 was pertinent to the plaintiff's prayer for punitive damages on its bad faith claim). However, in order to resolve the issues on appeal, we need not decide whether a violation of the Unfair Trade Practices Act could support an award of punitive damages in this case.

subjective. *Id.* ("It is sufficient in Iowa to show that the insurer denies a claim knowing or having reason to know that its denial is without basis."). A reasonable basis exists to deny policy benefits if the insured's claim is "fairly debatable either as a matter of fact or law." *Bellville v. Farm Bureau Mut. Ins. Co.*, 702 N.W.2d 468, 473 (Iowa 2005). "A claim is 'fairly debatable' when it is open to dispute on any logical basis" or "if reasonable minds can differ on the coverage-determining facts or law." *Id.* "Whether a claim is fairly debatable can generally be decided as a matter of law by the court." *Id.* "[W]here an objectively reasonable basis for denial of a claim *actually exists*, the insurer cannot be held liable for bad faith as a matter of law." *Id.* (citation omitted).

The district court found Acuity did not act in bad faith initially after the tornado as it sent its adjuster out to review the damage and issued a check within four days of the disaster. The court found B & F Jacobson failed to provide any evidence that Acuity did not include in this first estimate all the tornado damage it then believed had occurred. Because Acuity had not denied the claim at this stage, we agree without further comment as to the district court's conclusion on this point.

Next, the court concluded B & F Jacobson failed to prove that Acuity's failure to reinvestigate the claim resulted in the loss of its reasonable basis because it never received substantial information from B & F Jacobson that indicated further investigation was necessary. The court found that B & F Jacobson failed to provide the court with enough evidence to negate Acuity's

reasonable basis for the denial. We turn now to the issues concerning reinvestigation and subsequent denial.

A reasonable fact finder could conclude Werger's email response in August of 2012 that "we are not opening up the claim,"[3] indicated that, in reliance on the purported release, Acuity would not consider any additional information and implied any additional claim—if one were submitted—would be denied.[4] This response could be interpreted as an attempt to stop B & F Jacobson from submitting additional damage information. If that is true, then Acuity preemptively denied the additional damage claim of B & F Jacobson before additional information could be submitted by B & F Jacobson. This is the denial that is the focus of the bad faith claim.

The question for us at this point is whether Acuity's reliance on the purported release to preemptively deny the additional damage claim was "objectively reasonable." *Id.* "[I]f reasonable minds can differ on the coverage-determining facts or law" then the claim is considered "fairly debatable," and the insurer cannot be held liable for bad faith as a matter of law. *Id.* B & F Jacobson contends it was not reasonable for Acuity to rely on the policy holder's release to refuse to reinvestigate the additional damage claim because the release was provided to B & F Jacobson within four days of the tornado before it had the time and ability to assess its own damages. B & F Jacobson asserts the check issued

---

[3] The complete email said: "On vacation until the 13th. Policyholders release so we are not opening up the claim. I can send when I get back"

[4] It is significant to note that Werger did not reply that Acuity would reopen the claim if it was provided additional information. We also note that Werger did not mention any failure of to satisfy a condition precedent such as notice, nor did he mention accord and satisfaction as a reason for refusing to reopen the claim.

by Acuity represented only the "undisputed" part of the insurance claim, and it had no intention to fully and finally settle its claim with Acuity at that point. These claims implicate the provisions of Iowa Administrative Code rule 191-15.41(10). We should be clear that we need not reach the question as to whether a violation of that regulation could by itself support a bad faith claim. We do, however, conclude that the regulation establishes a standard of conduct, the violation of which could—together with other evidence—form the basis of a conclusion that the conduct was not objectively reasonable.

We decide that this is one of those rare circumstances in which we cannot say as a matter of law or a matter of fact whether the claim is fairly debatable. A fact finder must determine whether the preemptive denial of the claim was objectively reasonable. A fact finder must also determine whether Acuity knew that reliance on the release was not a reasonable basis for preemptively denying the claim or acted with reckless disregard as to whether such reliance was reasonable—subjective reasonableness.

Accordingly, we find that there are genuine issues of material fact such that summary judgment on the bad faith claim and the accompanying claim for punitive damages cannot be determined at this time as a matter of law.

## VI. CONCLUSION.

In conclusion, we find there is clearly an unanswered question regarding whether the notice provision in the policy applies to the additional damage claim in this case. In addition, there is a factual question as to whether a ten-month delay in providing the additional damage notice—if it were required—failed to

substantially comply with the notice provisions in the policy. We also find a factual question regarding whether or not Acuity was prejudiced by the ten-month delay in receiving notice of the additional damage claim, assuming the fact finder determines the notice provision is applicable in this factual situation as detailed above. We agree with the district court that B & F Jacobson has established a factual question regarding the application of accord and satisfaction. There is a question of whether there was a bona fide dispute between the parties when the check was issued and a question regarding whether the amount Acuity paid to B & F Jacobson was liquidated or unliquidated. We also agree with the district court that there is factual question regarding whether Acuity acted in good faith in putting "Settlement in Full-ACV" on the check it issued days after the tornado. Finally, we decide that this is one of those rare circumstances in which we cannot say as a matter of law or a matter of fact whether the claim is fairly debatable. A fact finder must determine whether the preemptive denial of the additional damage claim was objectively reasonable and must determine whether Acuity's reliance on the release provided a reasonable basis to preemptively deny the claim.

We therefore affirm the summary judgment decision of the district court with respect to its accord and satisfaction ruling, we reverse the decision with respect to the notice provision and the bad faith claim, and we remand the case to the district court for further proceedings consistent with this opinion.

**AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.**